IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
CHLOÉ, S.A.S., J. CHOO LIMITED,                    :   Civil Action No.: 07 CV 6491 (WHP)
:
              Plaintiffs,                     :
:
  - against -                                     :
:
KEN CHEN a/k/a SHU CHEN a/k/a XIANG       :   PLAINTIFFS' MEMORANDUM OF LAW IN
CHEN, DANIEL DOE, GODDESS                 :   REPLY TO DEFENDANTS' QUICK GLOBAL
TRADING d/b/a                             :   SHIPPING, LISA WU d/b/a QUICK GLOBAL
GODDESSTRADING@HOTMAIL.COM,               :   SHIPPING AND SONG GAO d/b/a QUICK
LUXUNG GOODS, LUXURY GOODS,               :   GLOBAL SHIPPING's SECOND
TERRY DOE d/b/a                           :   OPPOSITION TO THE TEMPORARY
AZNTERRY911@HOTMAIL.COM, JASON            :   RESTRAINING ORDER, SEIZURE ORDER,
DOE d/b/a JARRY326@YAHOO.COM.CN,          :   ORDER TO SHOW CAUSE FOR A
FASHION HANDBAGS, BENNY DOE,              :   PRELIMINARY INJUNCTION, EXPEDITED
JEANCARLO DOE, JOSEPH a/k/a JOSE          :   DISCOVERY ORDER, ORDER
DOE, SISI a/k/a CECI DOE, TOP LUXURY      :   RESTRAINING ASSETS AND ORDER
HANDBAGS d/b/a                            :   SEALING FILE.
LUXURYHANDBAGS277@YAHOO.COM,              :
FRANCISCO DOE, BEN DOE, CARLOS            :
DOE, INSTYLE LUXURY HANDBAGS,             :
CORINA DOE a/k/a QIMIAO HU a/k/a QI       :
MIAO HU, KENNY DOE a/k/a YE GUO           :
a/k/a GUO Q YE, NEWCOME TRADING           :
d/b/a TOSCA, QUICK GLOBAL SHIPPING,       :
HOWARD EXPRESS SHIPPING, RANDY            :
DOE, and various JOHN and JANE DOES 1-    :
10 and XYZ COMPANIES                      :
(UNIDENTIFIED),                           :
:
              Defendants.                     :
:
------------------------------------------------------------ x

      CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively, "Plaintiffs") submit this Memorandum of Law in Reply to Defendants Quick Global Shipping ("Quick Global"), Lisa Wu ("Wu") d/b/a Quick Global Shipping and Song Gao ("Gao") d/b/a Quick Global Shipping (collectively, "Quick Defendants") Second Opposition to the Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Second Opposition").

NY 238499167v2 8/9/2007

## PRELIMINARY STATEMENT

Plaintiffs are world-famous designers and producers of high-quality handbags and other luxury goods ("Plaintiffs' Products"). Plaintiffs' Products are identified by Plaintiffs' federally registered marks ("Plaintiffs' Marks"). The Quick Defendants, without consent or authorization, are importing, distributing, and selling counterfeit handbags bearing Plaintiffs' Marks and designed to look like Plaintiffs' Products, or the means for making the same ("Counterfeit Products"). The Quick Defendants are part of a common operation which controls various shops and businesses, primarily in lower Manhattan (Chinatown) that sell Counterfeit Products

Plaintiffs received a Continued Temporary Restraining Order from the Court ("TRO") based on evidence that Quick Defendants ship and provide storage for Counterfeit Products for, among others, named defendants in this Action. Plaintiffs executed the seizure on July 25, 2007 pursuant to the TRO, and confiscated over 165 Counterfeit Products from Quick Defendants' premises at 25 Howard Street, New York, New York 10013 ("Premises").

A reading of the Quick Defendants' "Second" Opposition (which does not differ from their earlier submission) in fact supports the granting of a preliminary injunction against them and continuation of the asset restraint. With the knowledge that Plaintiffs seized over 165 Counterfeit Products from the Premises as well as significant documents pointing to the involvement of the Quick Defendants in the counterfeiting of Plaintiffs' Products, Quick Defendants, instead of offering evidence contradicting Plaintiffs' submissions, seek to deflect this Courts' attention by alleging, via counsel, that allegations leading up to the seizure were false and thus somehow Plaintiffs are not entitled to the preliminary injunction or a continuation of the asset restraint. As discussed in detail below, the allegations alleged to be false are in fact true; the Quick Defendants knowingly engaged in the shipping, receiving and transmission of Counterfeit Products; subleased premises for the storage of counterfeit goods and have a prior

history of doing all of the above. In fact, the Quick Defendants were and are one of a limited number of operations providing a critical shipping service to those on Canal Street dealing in Counterfeit Products. Nothing offered via the rather bizarre affidavit of counsel and so called Memorandum of Law (which is absent law) supports anything to the contrary. Nothing has changed except the name of the entity. Quick Global, formerly Q's Global Inc., at the same premises, continued the same activity for which they have been sued and upon which judgment was taken. Quick Global was and still is an integral cog in the machinery of counterfeiting. As shown below, Plaintiffs are entitled to a preliminary injunction as they will likely succeed on the merits of this case. In addition, Plaintiffs are entitled to a continuation of the asset restraint.

## FACTUAL BACKGROUND

### I.    Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks and trade names, including Plaintiffs' Marks, throughout the United States and elsewhere in the World. Plaintiffs own the entire right, title and interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[1]

### II.    The Quick Defendants' Conduct

Plaintiffs, through their counsel and investigators, thoroughly investigated the Quick Defendants and confirmed that they are knowingly participating in the sale and distribution of Counterfeit Products by reason of the shipping, receiving and storage of same.[2] Whether they have knowledge or not is not relevant, although any credible reader can only conclude that they

---

[1] See Declaration of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Declaration of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Support of Plaintiffs' Application for a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery (collectively, "TRO Application"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Application and Complaint, filed July 17, 2007, in this matter are incorporated herein by reference.
[2] See generally Declaration of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl."), filed in support of TRO Application.

in fact knew exactly what they were doing. The Quick Defendants ship these counterfeit handbags openly and provide ample facilities for known counterfeiters, including other defendants named in this action, to store Counterfeit Products and distribute them to customers.[3] Plaintiffs have not in any way authorized or consented to the Quick Defendants' sale or distribution of Counterfeit Products.[4]

The Quick Defendants are clearly aware of Plaintiffs' Products and the counterfeit nature of handbags for which they provide storage and shipping services. Indeed, the Quick Defendants are well-connected to counterfeiters, as they bought the business of defendants named in a prior lawsuit for counterfeiting watches, and incorporated their business at the same address prior to the date that the related defendants were permanently enjoined from counterfeiting those marks.[5]

On July 25, 2007, Plaintiffs executed the TRO at the Premises, during which they discovered storage rooms containing Counterfeit Products (over 165 items were seized along with relevant documents) over which Defendant Gao, proprietor of Quick Global, had control.[6] Plaintiffs' representatives also restrained $322,247 in assets in the name of Defendant Wu, a manager of Quick Global.[7] The documents and Counterfeit Products seized by Plaintiffs' representatives evidence the Quick Defendants' connection and lease of storage facilities, the

---

[3] *Id*; *see also* Declaration of Heidi Garfield in Reply to Quick Defendants' Opposition to the Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Garfield Decl.") and exhibits thereto, which was filed August 2, 2007 and is incorporated herein by reference.

[4] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.

[5] *See* Declaration of Harley Lewin ("Lewin Decl."), filed in support of TRO Application, dated July 17, 2007, Exs. A-B (Perm. Inj. And Final J. On Consent As To Defs. Q's Global Inc., et al., entered Sept. 14, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002)); *see also* McCarthy Decl. at ¶¶ 83-84; Supplemental Declaration of Heidi Garfield in Support of Plaintiffs' Second Reply to Quick Defendants' Opposition to the Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Supplemental Garfield Decl."), dated August 9, 2007, at ¶ 2, Ex. F. The Supplemental Garfield Decl. follows the Garfield Decl., filed August 2, 2007.

[6] Declaration of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the Order, at ¶ 41.

[7] *Id*. at ¶ 42; *see also* Supplemental Garfield Decl. at ¶ 3, Ex. G.

Premises, to known counterfeiters and other defendants in this action.[8] Documents seized from the Premises evidence a number of product orders from a distributor of Counterfeit Products and another defendant in this action, Newcome Trading Inc. d/b/a Tosca.[9] Indeed, the seizure of more than 165 Counterfeit Products *from the Quick Defendants' Premises* inextricably links them to counterfeiting activity.

## ARGUMENT

I. **Quick Defendants' Failure to Cite Legal Authority In their Memorandum of Law is Inconsistent with Southern District Practice**

The Quick Defendants filed a memorandum of law in support of their Second Opposition that is in all material respects a recitation of the same facts and arguments set forth in the accompanying Declaration of Mahendra M. Ramgopal. But for a cursory recitation of Section 34 of the Lanham Act and a single citation to a Central District of California case, Quick Defendants fail to cite persuasive legal authority for their arguments.[10] Failure to cite to any legal authority "unfairly and unreasonably shifts the burden of articulating [a party's] arguments to the party opposing the motion or to the court." *Toner v. United Broth. of Carpenters*, No. 96 Civ. 0023, 1999 WL 178784, at *1 (S.D.N.Y. Mar. 31, 1999). A memorandum of law that is only a reformatted declaration is not only inconsistent with the practice of this district, but it is tantamount to filing only a declaration, with no memorandum of law. It is well settled that "[s]ubmitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1." *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, No. 98 Civ. 5045, 2000 WL 96944, at *3 (S.D.N.Y. July 11, 2000). Moreover, legal arguments are not appropriate in an attorney's

---

[8] *See* Garfield Decl. at ¶¶ 2-4, Exs. A-C.
[9] *See id.*, at ¶¶ 3-4, Exs. B-C.
[10] Indeed, Quick Defendants' single citation to case law is to a case that supports asset restraint in cases such as this one and bolsters Plaintiffs' restraint of the Quick Defendants' assets. *See Reebok Intern. Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521 (S.D.Cal. 1989) (holding that the plaintiff in a counterfeiting action was entitled to preliminary injunction under Lanham Act prohibiting transfer of the defendants' assets); *see also infra* § III.

affirmation, but instead, should only be presented in a properly filed memorandum of law. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (striking legal arguments from an attorney's affidavit filed in support of a motion). Such a memorandum fails not only the requirements of this district but also the warning issued by this Court to the Quick Defendants at the hearing in this matter on August 3, 2007. *See* S.D.N.Y. Local Civ. R. 7.1. Quick Defendants' failure to comply with the Court's local rules is fundamentally unfair and prejudicial to Plaintiffs and the Court should disregard Quick Defendants' Second Opposition.

## II.  Plaintiffs Have Met the Evidentiary Standard for a Preliminary Injunction

The Quick Defendants incorrectly assert that this Court should refuse to enter a preliminary injunction against the Quick Defendants, or continue the TRO and relief that has already been granted to Plaintiffs, because Plaintiffs rely on inadmissible evidence. To the contrary, a preliminary injunction may be granted under a relaxed evidentiary standard that permits evidence that may not be admissible at trial. *See RxUSA Wholesale, Inc. v. Dept. of Health and Human Servs.*, 467 F. Supp. 2d 285, 291 (E.D.N.Y. 2006) ("a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits") (internal citation omitted); *see also Gucci America, Inc. v. Accents*, No. 6-CIV-9575, 1997 WL 691431, at *2 n2 (S.D.N.Y. Nov. 5, 1997) (relaxed standard of preliminary injunction hearing permits evidence that may not be admissible at trial).

The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music*

*GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995). This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979). As explained in full in Plaintiffs' Memorandum filed in support of the TRO, Quick Defendants are causing Plaintiffs irreparable harm and Plaintiffs meet the preliminary injunction criteria.[11]

### A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST THE QUICK DEFENDANTS

To prevail on their trademark infringement claim, Plaintiffs must demonstrate that they own Plaintiffs' Marks and that a likelihood of confusion will result from Quick Defendants' conduct. *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270. The Quick Defendants do not dispute Plaintiffs' ownership of Plaintiffs' Marks. They argue only that they did not take part in counterfeiting business at the Premises. This is the ultimate issue, because "counterfeit marks are inherently confusing." *Philip Morris US Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004).

Plaintiffs have established at least a likelihood that Quick Defendants are engaging in unauthorized, confusing use of Plaintiffs' Marks. Evidence seized from the Premises demonstrates that Quick Defendants are not only shipping but also warehousing Counterfeit Products. Quick Defendants admit that Defendant Wu is the lessee of the space occupied by Defendant Quick Global, the Premises which is then subleased to known counterfeiters, and that Defendant Gao is the manager of Defendant Quick Global.[12] Documents seized from Quick

---

[11] As the Quick Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).

[12] Quick Defendants Memorandum of Law in Support of Second Opposition to Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Quick Defendants' Memorandum") at 2.

Defendants' Premises also identify Defendant Wu as manager of Quick Global.[13] Quick Defendants also admit that Quick Global subleases the storage rooms to individuals who are known to be dealing in Counterfeit Products, as evidenced by Plaintiffs' seizure of more than 165 Counterfeit Products from the Premises.[14] There can be no question that Plaintiffs are likely to succeed in proving that Quick Defendants are liable for trademark infringement.

### B. IN ADDITION, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST THE QUICK DEFENDANTS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982). Since a seller bears strict liability for Lanham Act violations, even an "innocent" individual who sells infringing goods is liable for trademark infringement -- intent is not required. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). This Court has found "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party." *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982). A contributor who knew or had reason to know of Lanham Act violations or was "willfully blind" to violations is thus liable. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996). To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004). Even if the Quick Defendants are not directly involved in the sale of Counterfeit Products, they are liable for contributory trademark infringement because they are willfully blind to counterfeiting businesses run by subtenants.

---

[13] Supplemental Garfield Decl. at ¶ 3, Ex. G.
[14] Quick Defendants' Memorandum at 2; Bookbinder Decl. at ¶ 41.

This Court has granted plaintiffs a preliminary injunction against counterfeiters on facts almost identical to those here. In *Cartier Int'l B.V. v. Liu*, this Court awarded a preliminary injunction against a business acknowledged to have "knowingly handled the shipment of defendants' counterfeit merchandise to customers." *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *2 (S.D.N.Y. Apr. 17, 2003). As in this action, the *Cartier* plaintiffs' investigators seized counterfeit goods in sealed packages found on the shippers premises. *Id.* Indeed, the Quick Defendants here were willfully blind to conduct occurring on their premises, as Quick Defendants always maintained access to the subleased storage units and, further, provided Plaintiffs' representatives with access to them.[15] Landlords, such as the Quick Defendants, have been found contributorily liable for the acts of trademark infringement committed by their tenants. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against the Quick Defendants and are entitled to a preliminary injunction.

### III. PLAINTIFFS ARE ENTITLED TO CONTINUE ASSET RESTRAINT AS TO THE QUICK DEFENDANTS

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs are entitled to an equitable accounting of the Quick Defendants' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech*

---

[15] Garfield Decl. at ¶¶ 2-4; Bookbinder Decl. at ¶ 41.

*Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark."). To succeed on a request for an asset restraint, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if assets were not frozen. *Reebok*, 737 F. Supp. at 1524, 1527.

In the *Cartier* case, on facts nearly identical to here, this Court included in its preliminary injunction a provision continuing the asset restraint that had been part of the temporary restraining order. *Cartier Int'l*, 2003 WL 1900852, at *3. Despite an entitlement to a full asset restraint, Plaintiffs have cooperated with the Quick Defendants in good faith with respect to assets linked to other businesses, including Defendant Wu's real estate business.[16] Plaintiffs released a substantial amount of money to Defendant Wu and remain open to additional relief based on need and proof of origin of the money. Plaintiffs will likely succeed on the merits of their claims and are incurring irreparable injury. The close connection of the Quick Defendants to known counterfeiters tends to favor the conclusion that they would likely hide assets, thereby rendering an accounting meaningless. Accordingly, the grant of an injunction restraining the transfer of the Quick Defendants' assets is proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to deny the Quick Defendants' requested relief of dischargement, dissolution or modification of the TRO and grant Plaintiffs' request for a preliminary injunction against the Quick Defendants.

---

[16] Garfield Decl. ¶¶ 5-6.

Dated: New York, New York
August 9, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By: _____
Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
James Donoian (JD 9052)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
MetLife Building
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Katherine Compton
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3660
Facsimile: (214) 665-5960
*Pro Hac Vice Pending*

*Attorneys for Plaintiffs*
*Chloé, S.A.S., J. Choo Limited*