## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
               :

CHLOÉ, S.A.S., J. CHOO LIMITED,         :     Civil Action No.: 07 CV 6491 (WHP)

            Plaintiffs,      :

               :

    - against -            :

KEN CHEN a/k/a SHU CHEN a/k/a XIANG  :  **SECOND MEMORANDUM OF LAW IN**
CHEN, DANIEL DOE, GODDESS       :  **REPLY TO DEFENDANT HOWARD**
TRADING d/b/a               :  **EXPRESS SHIPPING'S SECOND**
GODDESSTRADING@HOTMAIL.COM,    :  **OPPOSITION TO THE TEMPORARY**
LUXUNG GOODS, LUXURY GOODS,      :  **RESTRAINING ORDER, SEIZURE ORDER,**
TERRY DOE d/b/a            :  **ORDER TO SHOW CAUSE FOR A**
AZNTERRY911@HOTMAIL.COM, JASON  :  **PRELIMINARY INJUNCTION, EXPEDITED**
DOE d/b/a JARRY326@YAHOO.COM.CN,  :  **DISCOVERY ORDER, ORDER**
FASHION HANDBAGS, BENNY DOE,     :  **RESTRAINING ASSETS AND ORDER**
JEANCARLO DOE, JOSEPH a/k/a JOSE     **SEALING FILE.**
DOE, SISI a/k/a CECI DOE, TOP LUXURY
HANDBAGS d/b/a            :
LUXURYHANDBAGS277@YAHOO.COM,
FRANCISCO DOE, BEN DOE, CARLOS     :
DOE, INSTYLE LUXURY HANDBAGS,
CORINA DOE a/k/a QIMIAO HU a/k/a QI   :
MIAO HU, KENNY DOE a/k/a YE GUO
a/k/a GUO Q YE, NEWCOME TRADING   :
d/b/a TOSCA, QUICK GLOBAL SHIPPING,
HOWARD EXPRESS SHIPPING, RANDY
DOE, and various JOHN and JANE DOES 1-  :
10 and XYZ COMPANIES
(UNIDENTIFIED),

           Defendants.      :

               :

---------------------------------------------------------x

     CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively,

"Plaintiffs") hereby submit this Second Memorandum of Law in Reply to Defendant Howard

Express Shipping's ("Howard Express") Second Opposition to Plaintiffs' *ex parte* Application

for a Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary

Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File

("Second Opposition") as it applies to Howard Express based on Plaintiffs' action for trademark

counterfeiting, trademark infringement, unfair competition, false designation of origin, and trademark dilution arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and for trademark infringement, unfair competition, trademark dilution and unlawful deceptive acts and practices under the laws of the State of New York.

## PRELIMINARY STATEMENT

Plaintiffs are world-famous designers and producers of high-quality handbags, apparel and other luxury goods ("Plaintiffs' Products"). Plaintiffs' celebrated products are identified by one or more of Plaintiffs' several federally registered marks ("Plaintiffs' Marks"). Howard Express, without Plaintiffs' consent or authorization, is knowingly trafficking counterfeit handbags bearing Plaintiffs' Marks and designed to look exactly like genuine Plaintiffs' Products, or the means for making the same (the "Counterfeit Products") in reckless disregard for trademark law and the rights of Plaintiffs. Howard Express, with other defendants named in this action, is part of a common operation which controls various shops, booths and businesses, primarily in lower Manhattan (Chinatown) that sell Counterfeit Products to the tourists and residents alike.

Howard Express is a shipping company against which judgments and permanent injunctions have been entered in at least one other case involving counterfeiting trademarks of luxury goods. Howard Express' rampant counterfeiting will continue to cause irreparable harm to Plaintiffs and to Plaintiffs' valuable and famous trademarks, their outstanding reputation and goodwill, and their rightful market position if the requested injunctive relief is not granted.

Plaintiffs sought, and received, a Temporary Restraining Order from the Court ("TRO") allowing Plaintiffs to seize all unauthorized and unlicensed merchandise bearing Plaintiffs'

Marks, as well as the means for making the same, and books and records relating thereto and restrain Howard Express' assets.  On July 25, 2007, Plaintiffs' representatives executed the TRO at Howard Express' Premises.   Plaintiffs' representatives found and seized 12 Counterfeit Products and documents evidencing Howard Express' involvement in the manufacture, sale and distribution of Counterfeit Products, including Howard Express' business connections to other members of the Chinatown counterfeiting ring, including several named defendants in this action.  Howard Express admits to having been previously been sued before for counterfeiting by another company who sells luxury brands.

Howard Express' Second Opposition has provided no new information on liability.  They offer only unsupported denials to Plaintiffs' virtually proven allegations of Howard Express' sale and distribution of Counterfeit Products.  Plaintiffs' obligation is not to prove their case at this stage but to show they are ultimately more likely than not to succeed on the merits.   The unsupported statements by a party defendant that its principal "lacks knowledge of its customer's illegal conduct" are insufficient to overcome Plaintiffs' clear and convincing evidence.

Plaintiffs respectfully request, based upon the well documented evidence of Howard Express' involvement in counterfeiting, coupled with its known history of counterfeiting recidivism, that the Court enter a preliminary injunction against Howard Express in the form contained in the TRO and maintain the asset restraint as to Howard Express.

## FACTUAL BACKGROUND

### I.    Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks and trade names, including Plaintiffs' Marks, throughout the United States and elsewhere in the World.  Plaintiffs own the entire right, title and

interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[1] Plaintiffs have not in any way authorized or consented to Howard Express' sale or distribution of Counterfeit Products.[2]

## II.    Howard Express' Conduct

Plaintiffs, through their counsel and investigators, have thoroughly investigated this group of Defendants in this Action and have confirmed that Howard Express is knowingly distributing, marketing, offering for sale and selling Counterfeit Products through the shipping services offered by Howard Express.[3] Howard Express ships these counterfeit handbags openly and provides ample services for known counterfeiters, including other defendants named in this action, to distribute Counterfeit Products to customers.

Howard Express is clearly aware of genuine Plaintiffs' Products and the counterfeit nature of the handbags for which they are providing storage and shipping services. Indeed, Howard Express is a counterfeiting recidivist, as it was a named defendant in a prior lawsuit for counterfeiting high-end watches and was permanently enjoined from counterfeiting of those marks and brands despite purportedly being merely a "shipper."[4] Jerry Tran, a principal of Howard Express, is plainly aware of counterfeiting activities being conducted via shipping service providers and his own connection to the same as a recidivist.[5]

---

[1] See Decl. of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Decl. of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Supp. of Pls' Appl'n for a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO Application"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Appl'n and Compl., filed July 17, 2007, and Pls' Reply filed Aug. 2, 2007 in this matter are incorporated herein by reference.

[2] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.

[3] See generally Decl. of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl.").

[4] See Decl. of Harley Lewin ("Lewin Decl.") dated July 17, 2007, Exs. A-B (Perm. Inj. And Final J. On Consent As To Defs. Q's Global Inc., et al., entered Sept. 14, 2004, Cartier Int'l B.V. et al v. Liu et al., No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002); Perm. Inj. And Final J. On Consent As To Defs. Howard Shipping And Trading, et al., entered Jul. 12, 2004, Cartier Int'l B.V. et al v. Liu et al., No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002).

[5] See generally Decl. of Jerry Tran in Opp'n to Pls' Mot. for Prelim. Inj. ("Tran Decl."), dated Aug. 1, 2007, at ¶ 7.

On July 25, 2007, Plaintiffs executed the TRO at Howard Express' place of business at 33 Howard Street, New York, NY 10013 ("Howard Express Premises") and served Howard Express, as identified in the TRO. Plaintiffs' representatives seized 12 Counterfeit Products from the Howard Express Premises, as well as documents evidencing involvement in the manufacture, sale and distribution of Counterfeit Products.[6] Documents seized demonstrate Howard Express' business connections to other members of the Chinatown counterfeiting ring, including several Defendants in this action, such as Yu Lin a/k/a Benny Doe.[7] These documents include mailbox service agreements, customer and account lists and shipping receipts identifying known counterfeiters, and Defendants in this action, including for the shipment of "fashion handbags" for individuals and entities at 265 Canal Street, where many other defendants named in this action do business.[8] Pursuant to the TRO, Plaintiffs' representatives also restrained approximately $800 in assets held in the name of Howard Express.[9] The documents and Counterfeit Products seized by Plaintiffs' representatives evidence Howard Express' involvement with and connection to known counterfeiters and other defendants in this action.[10]

## ARGUMENT

**I.    Plaintiffs Are Entitled To A Preliminary Injunction Against Howard Express**

Section 34 of the Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. 1116(a). The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b)

---

[6] Decl. of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the TRO, at ¶ 37.
[7] *See* Decl. of Heidi Garfield in Supp. of Pls' Reply to Howard Defendants' Opp'n ("Garfield Decl."), dated Aug. 2, 2007, at ¶¶ 2-5, Exs. A-D.
[8] *Id.*
[9] *See* Bookbinder Decl. at ¶¶ 38-40.
[10] *See* Garfield Decl. at ¶¶ 2-5, Exs. A-D.

sufficiently serious questions going to the merits to make them a fair ground for litigation with

the balance of hardships tipping decidedly in favor of the party requesting preliminary relief.[11]

As explained in full in Plaintiffs' Memorandum filed in support of the TRO, all defendants in

this action are causing Plaintiffs irreparable harm by their counterfeiting, and Plaintiffs are likely

to succeed on their claims.  Plaintiffs meet the preliminary injunction criteria with respect to

Howard Express.[12]

## A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST HOWARD EXPRESS

To prevail on their trademark infringement claim, Plaintiffs must demonstrate that they

own Plaintiffs' Marks and that a likelihood of confusion will result from Howard Express'

conduct.  *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.

1999); *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486, 489090 (2d Cir. 1988).  Howard

Express argues that it "had no knowledge whatsoever of plaintiff's trademark" and did not take

part in the counterfeiting business discovered by Plaintiffs at the Howard Express Premises.[13]

Plaintiffs' federal trademark registrations, however, are constructive notice to Howard Express,

and the World, of Plaintiffs' claim to ownership thereof.  15 U.S.C. § 1072; *Fusco Group, Inc. v.

Loss Consultants Int'l, Inc.*, 462 . Supp. 2d 321, 330 (N.D.N.Y. 2006) (finding alleged infringer

on constructive notice of trademark holder's claim of ownership as a result of registration of the

mark).

---

[11] *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995).  This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979).
[12] As the Howard Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).
[13] Howard Express Mem. of Law in Opp'n to Plf's App'n for an Order Restraining Assets, Expedited Disc. Order, and an Order for Prelim. Inj., at 2.

The fact remains that Plaintiffs have established at least a likelihood that Howard Express is engaging in unauthorized, confusing use of Plaintiffs' Marks, as recognized by this Court's grant of the TRO. Plaintiffs' TRO Application sets forth clear evidence identifying Howard Express as a primary and well-known shipper of Counterfeit Products and evidence seized pursuant to the TRO demonstrates that Howard Express is indeed shipping Counterfeit Products.[14] Despite the Howard Express' protestations of innocence, Plaintiffs are likely to succeed in proving that Howard Express is liable for trademark infringement, thus a preliminary injunction should be entered against it.

## B. ALTERNATIVELY, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST HOWARD EXPRESS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce"). Since a seller bears strict liability for violations of the Lanham Act, even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark infringement -- intent is not required. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). This Court has recognized "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party." *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982). A contributor who knew or had reason to know of the Lanham Act violations or was "willfully blind" to the violations is liable for trademark infringement. *Fonovisa, Inc. v. Cherry*

---

[14] *See*, Bookbinder Decl. ¶ 37.

*Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996).  To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate.  *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004).  Even if Howard Express is not directly involved in the sale of the Counterfeit Products, it remains liable for contributory trademark infringement because it chose to be willfully blind to the counterfeiting business operated through its shipping services.

Howard Express presents no binding precedent to support its argument that Plaintiffs are not likely to succeed in proving that Howard Express was willfully blind to the counterfeiting operation it was facilitating through providing shipping services.  Howard Express instead relies on three out-of-Circuit cases which are either irrelevant (an action under the Civil Rights Act) or support Plaintiffs' position.  *See Splunge v. Shoney's Inc.*, 97 F.3d 488 (11th Cir. 1996); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991) (finding that undisputed facts could support an inference of knowledge or willful blindness); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584 (7th Cir. 1989) (in damages inquiry, finding that "it is enough for these purposes that the defendant failed to inquire further because he was afraid of what the inquiry would yield.  Willful blindness is knowledge enough.").

This Court has granted plaintiffs a preliminary injunction against trademark counterfeiters on facts almost identical to those here.  In *Cartier Int'l B.V. v. Liu*, this Court awarded plaintiffs a preliminary injunction against a business that was acknowledged to have "knowingly handled the shipment of defendants' counterfeit merchandise to customers." *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *2 (S.D.N.Y. Apr. 17, 2003).  As occurred in the instant action, the *Cartier* plaintiffs' investigators seized counterfeit goods in sealed packages found on the shippers premises.  *Id.*  Indeed, Howard Express here were willfully blind to conduct occurring on the Howard Express Premises, as Howard Express, an

admitted recidivist previously named alongside its owner in a counterfeiting action, continued to ship goods on behalf of known counterfeiters and identified such goods on shipping receipts as "Fashion Handbags."[15]

Finally, Howard Express cannot contractually escape liability for contributory infringement. *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 203 (3d Cir. 2004) (contract exclusion does not apply to tort claims); *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd,* 432 F.2d 784 (2d Cir. 1970). Howard Express' agreements with FedEx and UPS that prohibits sales of Counterfeit Products do not eliminate Howard Express' tort liability.[16] Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against Howard Express and are entitled to a preliminary injunction.

## II.    PLAINTIFFS ARE ENTITLED TO CONTINUE ASSET RESTRAINT AS TO HOWARD EXPRESS

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs are entitled to an equitable accounting of Howard Express' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g.*, *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association

---

[15] *See* Garfield Decl., ¶ 3, Ex. B.
[16] *See* Decl. of Jerry Tran in Opp'n to Plf's Mot. for Prelim. Inj., dated Aug. 8, 2007, at ¶ 11.

with the [plaintiff's] mark."). To succeed on a request for an asset restraint, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if assets were not frozen. *Reebok*, 737 F. Supp. at 1524, 1527.

In the *Cartier* case described above, on facts nearly identical to those here, this Court included in its preliminary injunction a provision continuing the asset restraint that had been part of the temporary restraining order issued in that case. *Cartier Int'l*, 2003 WL 1900852, at *3. As demonstrated above, and recognized by this Court in its grant of the TRO, Plaintiffs will likely succeed on the merits of their claims and are incurring irreparable injury. Further, the recidivism of Howard Express tends to favor the conclusion that it would likely hide assets, thereby rendering an accounting meaningless. Howard Express cites no legal authority, and has not presented any financial documents, either to the Court or Plaintiffs' counsel, to support its request for release of assets.[17] Accordingly, the grant of an injunction restraining the transfer of Howard Express' assets is proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to grant Plaintiffs' request for a preliminary injunction against Howard Express in the form contained in the TRO.

Dated: New York, New York  
     August 9, 2007

Respectfully submitted,  
GREENBERG TRAURIG LLP

By: _____  
Harley I. Lewin (HL 1819)  
Scott Gelin (SG 9599)  
James Donoian (JD 9052)  
GREENBERG TRAURIG, LLP  
200 Park Avenue, 34th Floor  
MetLife Building  
New York, New York 10166

---

[17] Decl. of Julie Bookbinder in Supp. of Pls' Second Reply, dated Aug. 9, 2007, ¶ 2.

Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Katherine Compton
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone:  (214) 665-3660
Facsimile:  (214) 665-5960
*Pro Hac Vice Pending*

*Attorneys for Plaintiffs*
*Chloé, S.A.S., J. Choo Limited*