IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

| | |
|---|---|
| CHLOE, S.A.S., J. CHOO LIMITED, | Civil Action No.: 07-cv-6491 |
| Plaintiffs, | |
| v. | **DECLARATION OF STEVE CHANG IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION and IN SUPPORT OF CROSS-MOTION TO RELEASE SEIZED FUNDS** |
| KEN CHEN a/k/a SHU CHEN a/k/a XIANG CHEN, DANIEL DOE, GODDESS TRADING d/b/a GODDESSTRADING@HOTMAIL.COM, LUXUNG GOODS, LUXURY GOODS, TERRY DOE cl/b/a AZNTERRY911@HOTMAIL.COM, JASON DOE d/b/a JARRY326@YAHOO.COM.CN, FASHION HANDBAGS, BENNY DOE, JEANCARLO DOE, JOSEPH a/k/a JOSE DOE, SISI a/k/a CECI DOE, TOP LUXURY HANDBAGS d/b/a LUXURYHANDBAGS277@YAHOO.COM, FRANCISCO DOE, BEN DOE, CARLOS DOE, INSTYLE LUXURY HANDBAGS, CORINA DOE a/k/a QIMIAO HU a/k/a QI MIAO HU, KENNY DOE a/k/a YE GUO a/k/a GUO Q YE, NEWCOME TRADING d/b/a TOSCA, QUICK GLOBAL SHIPPING, HOWARD EXPRESS SHIPPING, RANDY DOE, and various JOHN and JANE DOES 1-10 and XYZ COMPANIES (UNIDENTIFIED), | |
| Defendants. | |

I, Steve Chang, of full age and under penalty of perjury, declare and state as follows:

1. I am the President of Newcome Trading Inc., d/b/a Tosca ("Newcome"). We are located at 125 West 30th Street, New York, New York 10001.

2. We were served with a copy of the Redacted Complaint and the Temporary Restraining Order at our showroom in Manhattan and certain of our business records and products were seized.

3. Newcome was founded approximately 10 years ago for the sale of handbags, evening bags, wallets and belts.

4. On average, we sell over 100 styles of handbags every year. Some styles remain in our inventory for more than a year, but usually there is a great turnover as the fashions are constantly shifting and the types of handbags that consumers want constantly shifts.

5. Since we were founded 10 years ago, we have sold well over 1,000 different styles of handbags.

6. Another defendant who has been added to the case, New Wealth Trading, Inc. d/b/a Tosca is one of our suppliers. Though we both do business under the name Tosca, New Wealth and Newcome are two separate corporations owned by different persons.

7. The Complaint has photocopies of eleven specific handbags attached to it as exhibits, all of which are allegedly infringing products counterfeited by all of the named defendants.

8. Importantly, Newcome *never* purchased or sold any of the bags attached as exhibits to the Complaint and *never* sold any products bearing the Plaintiffs' trademarks.

9. When the plaintiffs' representatives came to our store, they seized certain different handbags from us and we understand that Plaintiffs are now alleging that these different

handbags violate their trade dress.

10. That argument is a far cry from demonstrating that our company had anything to do with these Chinatown alleged counterfeiters. We are a Korean-American owned wholesale store and not part of some Chinese counterfeit ring.

11. The only connection between the alleged Chinatown counterfeiters and Newcome is an individual named "Kenny" described in the Declaration of Kimberly McCarthy.

12. The Complaint itself not have any specific allegations against Newcome Trading, Inc. d/b/a Tosca and instead, in conclusory fashion, just lumps us in with all the other named defendants. In fact, Newcome is only mentioned once by name, in paragraph 22 of the Complaint, wherein Plaintiffs incorrectly allege that Newcome does business at **both** 125 West 30th Street and 25 Howard Street. Newcome's only location for the transaction of business is 125 West 30th Street where it has its wholesale showroom. ***Newcome has never done business at 25 Howard Street and any allegation to the contrary is simply not true.***

13. Other than paragraph 22 of the Complaint, the Complaint never again mentions Newcome by name and does not contain any specific allegation that Newcome engaged in counterfeiting.

14. In all the voluminous supporting papers that accompanied the Plaintiffs' request for the extraordinary *ex parte* relief they obtained, Newcome or Tosca (its d/b/a) is only mentioned in eight paragraphs (paras. 70, 71, 72, 76, 77, 78, 79 and 83) of the Declaration of Kimberly J. McCarthy and nowhere else that we have seen.

15. All of the allegations in the McCarthy Declaration involve interactions in November and December 2006 with a man identified by her as "Kenny" who operates his retail business from a location at 248 Canal Street. Newcome has a customer named Kenny who also

has a retail business at 248 Canal Street.  Presumably it is the same man.

16.    The Kenny known to us is a Chinese immigrant with limited English.  We do not speak whatever Chinese dialect he speaks and he does not speak Korean.

17.    Newcome has sold handbags to Kenny in the past, but did not sell to Kenny any of the bags which are attached as exhibits to the Complaint.

18.    We often do not accept company checks from some of our smaller customers such as Kenny because we have had such checks fail to clear on more than one occasion.  We often require our smaller customers to pay us either by wire transfer, money order or in cash.  We properly account in our books and records for all money orders and cash received from customers.

19.    We permit some of our customers to have an open account with us.  The Kenny we deal with has an account with us.  Sometimes he runs a debit with us and sometimes he has a credit with us.

20.    We have seen the money order for $243.00 made payable to "Tosca" that is attached as Exh. X to the McCarthy Declaration.  ***We have a copy of the same money order in our files.***  It is our general business practice to try to keep a copy of all checks and money orders that we receive from our customers.

21.    Our books and records show that on December 4, 2006, Kenny had an outstanding balance to us of $4,993.00.  Our books and records show that on December 5, 2006, Kenny made a partial payment to us of $2,126.00.  That sum was comprised of a combination of cash and the $243.00 money order which is attached as Exh. X to the McCarthy Declaration.

22.    The counterfeit bag which Kenny allegedly sold to the undercover investigator was not obtained by Kenny from us.  Kenny apparently had the investigator make out the

purchase money order to "Tosca" and then used that money order to pay us, together with cash, part of what he owed us for our sale to him of handbags that have nothing to do with the Plaintiffs' counterfeiting case.

23.     Kenny apparently then shipped the offending bag to the investigator from a location at 25 Howard Street and put the name of Tosca on the UPS return label.

24.     Kenny did not have our permission to use our name.

25.     We do not operate out of, or have any connection whatsoever to, 25 Howard Street.

26.     Kenny is not an employee, agent, owner or anything else of Newcome's, except for his status as a customer.

27.     We are not responsible for what Kenny did vis-à-vis the investigator and the offending bags and cannot be held responsible for his actions.  He did not purchase the offending bags from us and we had no knowledge that he was using our name on his UPS labels without our permission.

28.     Significantly, the Declaration of McCarthy, in paragraph 79, states that one of the investigators visited our showroom at 125 West 30th Street – our only place of business.  It is important to note that the McCarthy Declaration did not allege that we were selling counterfeit handbags out of our showroom or that there was any discussion whatsoever with "David" [David Lee is the Manager of our showroom] about the sale of Plaintiffs' products, whether they be licensed, counterfeit or anything else.

29.     Simply put, Newcome has nothing to do with the alleged counterfeiting activities of the other named defendants.  We have been dragged into this case because of a money order and an unauthorized use of our name on a shipping label.  Other than that, Plaintiffs did not offer

one reliable shred of evidence when they brought their *ex parte* application alleging that Newcome is involved in the counterfeiting activities of the other named defendants.

30. Yet Plaintiffs have used the court's order to seize our files, seize our products – none of which are the same bags they show as exhibits to the Complaint – and had our bank accounts frozen. Our business is disrupted and we are in danger of missing the coming Fall season and being driven out of business.

31. There is no evidence that Newcome is involved in counterfeiting and intentionally putting false trademarks on bags and trying to pass them off as original Chloe and Jimmy Choo bags.

32. As to the different bags that Plaintiffs seized, reasonable minds could differ on whether any reasonable consumer would be confused into thinking they were Plaintiffs' products as they differ in numerous respects from the Plaintiffs' own products. The fashion industry is intensely competitive. Competitors are constantly monitoring what the competition is doing and what types of products are selling well and adapting accordingly. Plaintiffs are no different and neither is Newcome – but that does not make any of us counterfeiters.

33. Newcome is willing to enter into an agreement with the Plaintiffs to have a preliminary injunction issue which states that we will not infringe upon their marks, as we have not done so in the past and have no intention of doing so in the future.

34. Approximately $45,000 in operating capital in two different bank accounts has been frozen. Newcome needs these funds to operate, pay its employees, rent, etc. and to purchase product for the coming important Fall season. The Plaintiffs have made no showing that Newcome, an established business, is likely to secret its assets or flee. Therefore, there is no good cause for Newcome's bank accounts to be frozen or our business affairs interfered with by

the Plaintiffs and we ask that the court vacate that portion of its order which allows the Plaintiffs to freeze our bank accounts.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 1st day of August, 2007, at New York, New York.

_____
Steve Chang