## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

CHLOÉ, S.A.S., J. CHOO LIMITED,

                  **Plaintiffs,**

          - against -

KEN CHEN a/k/a SHU CHEN a/k/a XIANG
CHEN, DANIEL DOE, GODDESS
TRADING d/b/a
GODDESSTRADING@HOTMAIL.COM,
LUXUNG GOODS, LUXURY GOODS,
TERRY DOE d/b/a
AZNTERRY911@HOTMAIL.COM, JASON
DOE d/b/a JARRY326@YAHOO.COM.CN,
FASHION HANDBAGS, BENNY DOE,
JEANCARLO DOE, JOSEPH a/k/a JOSE
DOE, SISI a/k/a CECI DOE, TOP LUXURY
HANDBAGS d/b/a
LUXURYHANDBAGS277@YAHOO.COM,
FRANCISCO DOE, BEN DOE, CARLOS
DOE, INSTYLE LUXURY HANDBAGS,
CORINA DOE a/k/a QIMIAO HU a/k/a QI
MIAO HU, KENNY DOE a/k/a YE GUO
a/k/a GUO Q YE, NEWCOME TRADING
d/b/a TOSCA, QUICK GLOBAL SHIPPING,
HOWARD EXPRESS SHIPPING, RANDY
DOE, and various JOHN and JANE DOES 1-
10 and XYZ COMPANIES
(UNIDENTIFIED),

                  **Defendants.**

-------------------------------------------------------- X

Civil Action No.: 07 CV 6491 (WHP)

**MEMORANDUM OF LAW IN REPLY TO
DEFENDANTS PSK AMERICA, INC.'S AND
JAE MAN YOO'S SUPPLEMENTAL
OPPOSITION TO PRELIMINARY
INJUNCTION AND REQUEST FOR
DISSOLUTION AND MODIFICATION OF
COURT'S ORDERS.**

       CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively,

"Plaintiffs") hereby submit this Memorandum of Law in Reply to Defendants PSK America,

Inc.'s ("PSK") and Jae Man Yoo's ("Yoo") (collectively, "PSK Defendants") Supplemental

Opposition to Plaintiffs' *ex parte* Application for a Preliminary Injunction and Order Restraining

Assets as it applies to the PSK Defendants and Request for Modification of Court's Orders based

on Plaintiffs' action (the "Action") for trademark counterfeiting, trademark infringement, unfair

competition, false designation of origin, and trademark dilution arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and for trademark infringement, unfair competition, trademark dilution and unlawful deceptive acts and practices under the laws of the State of New York.

## PRELIMINARY STATEMENT

Defendants are knowingly trafficking in counterfeit handbags bearing Plaintiffs' federally registered marks ("Plaintiffs' Marks") which are designed to look exactly like genuine Plaintiffs' goods (the "Counterfeit Products") in reckless disregard for trademark law and the rights of Plaintiffs.  The PSK Defendants operate a retail booth where they process credit card transactions for other named defendants' sales of Counterfeit Products, and sub-lease adjacent retail space to a named defendant, from which Counterfeit Products are sold.  The PSK Defendants' rampant counterfeiting is causing, and will continue to cause, irreparable harm to Plaintiffs and to Plaintiffs' valuable and famous trademarks, their outstanding reputation and goodwill, and their rightful market position.

Plaintiffs sought, and received, a Temporary Restraining Order ("TRO") from the Court allowing Plaintiffs to seize all unauthorized and unlicensed merchandise bearing Plaintiffs' Marks, as well as the means for making the same, and books and records relating thereto and restrain the PSK Defendants' assets.  On July 20, 2007, Plaintiffs' representatives executed the TRO at the PSK Defendants' premises.  Plaintiffs' representatives found and seized 35 handbags bearing the CHLOÉ marks, and 10 handbag accessory locks bearing the CHLOÉ marks.[1]

PSK Defendants' supplemental submission has provided no new information on liability. They offer only unsupported denials to Plaintiffs' well documented and virtually proved

---

[1] Declaration of Julie Bookbinder Relating to Execution of TRO, dated Aug. 2, 2007 ("Bookbinder Decl."), ¶ 2.

allegations of PSK Defendants' role in the counterfeit sale and distribution of Counterfeit Products. Plaintiffs' obligation is not to prove their case at this stage but to show they are more likely than not, ultimately, to succeed on the merits. The unsupported statements of a party defendant are insufficient to overcome Plaintiffs' clear and convincing evidence.

As to the asset restraint, the PSK Defendants admit that they derive at least some of their income from these nefarious activities. As noted in Plaintiffs' initial application, and further below, and since there has been no showing by PSK Defendants to the contrary, the restraint on PSK Defendants' assets ought be continued to permit the requisite accounting and preserve the Court's ultimate remedy. The rather blatant attempt to play on this Court's sympathy with tales of imminent college tuition bills, while sympathetic indeed, ought not form a basis of any change in position.[2] The asset restraint against the PSK Defendants must be continued in view of PSK Defendants' failure to provide uncontradicted documentary proof that particular assets are not proceeds of the PSK Defendants' counterfeiting activities or assets that can be deemed substituted assets for the proceeds of the PSK Defendants' counterfeiting activities. Finally, PSK Defendants' request for damages as a result of the TRO granted by this Court should be denied as it is both wrongly made and premature.

## FACTUAL BACKGROUND

### I.    Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks, including Plaintiffs' Marks, throughout the United States and elsewhere in the World ("Plaintiffs' Products"). Plaintiffs own the entire right, title

---

[2] Plaintiffs' counsel attempted good-faith negotiations with PSK counsel, offering to release sufficient funds for payment of two months' tuition bills under the school's installment plan, but was rejected. Decl. of Katherine A. Compton in Supp. of Pls' Supp. Reply, dated Aug. 9, 2007, ¶ 3.

and interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[3]
Plaintiffs have not in any way authorized or consented to the PSK Defendants' sale or
distribution of Counterfeit Products.[4]

## II.    PSK Defendants' Conduct

Plaintiffs' representatives observed the PSK Defendants distributing, marketing, offering
for sale and selling Counterfeit Products through the retail space leased and operated by PSK
when Plaintiffs' representatives went to 420 Broadway, New York, NY 10013 ("420
Broadway") to serve named defendants, leading Plaintiffs' representatives to serve Defendant
PSK and Defendant Yoo as an XYZ Company and a John Doe Defendant, respectively.[5]

The PSK Defendants are clearly aware of genuine Plaintiffs' Products and the counterfeit
nature of the handbags for which they are providing retail and credit card services.  As detailed
in Plaintiffs' initial reply to the PSK Defendants' initial opposition to preliminary injunction,
PSK Defendants are connected to the vast web of counterfeiting in Chinatown through space
PSK leases at 420 Broadway a/k/a 277 Canal Street, New York, NY 10013.   Through the
unsupported declaration of defendant Yoo, PSK Defendants deny knowing what their neighbors
in the 420 Broadway space were doing.[6]  However the evidence is clear:

- PSK Defendants admit to providing retail space to Yu Lin a/k/a Benny Doe ("Lin"), a named defendant in this Action, via a sub-lease.[7]
- PSK Defendants share storage space with Lin, with the alleged PSK merchandise behind Lin's Counterfeit Products[8]

---

[3] See Decl. of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Decl. of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Supp. of Pls' Appl'n for a TRO,  Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO Application"), filed July 17, 2007.  All documents filed in connection with Pls' TRO Application and Compl., filed July 17, 2007, and Pls' Reply of August 2, 2007 in this matter are incorporated herein by reference.
[4] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.
[5] See generally Decl. of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl.").
[6] See generally Suppl. Aff. of Jae Man Yoo in Opp'n to Prelim. Inj. and for the Dissolution and Modification of the Court's Order as to PSK America, Inc. and Jae Man Yoo, dated Aug. 8, 2007 ("Supp. Yoo Decl.").
[7] PSK Defendants' Memorandum at 2, 4.
[8] Decl. of Jake Arnold Decl., dated Aug. 9, 2007 ("Arnold Decl.") ¶ 5.

- PSK Defendants sub-lease some of their own retail space and work directly alongside Lin, fully aware that Lin sells handbags.[9]
- PSK Defendants provide credit card processing services from their space for Lin's sale of Counterfeit Products.[10]
- Lin makes regular monthly rent payments to PSK Defendants.[11]

PSK Defendants' supplemental submission only reaffirms these facts and in no way exculpates them from liability.[12]  Documents seized from 420 Broadway, a space shared by the PKS Defendants and Lin, included numerous sales receipts for the sale of Counterfeit Products from that location.[13]  PSK Defendants are admittedly aware of Lin's prior involvement with the sale of products bearing counterfeit Louis Vuitton marks, due to an earlier action in which PSK was also named as a defendant and consented to a permanent injunction.[14]  In the Louis Vuitton action, the counterfeit products were also handbags, the same type of products of Plaintiffs herein.  Under these circumstances, it is incredulous for the PSK Defendants to suggest they had no knowledge of and did not participate in counterfeiting Plaintiff's Marks.

## ARGUMENT

### I.    Plaintiffs Are Entitled To A Preliminary Injunction Against The PSK Defendants

The Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. 1116(a).  The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b)

---

[9] *Id.* at 3.  These spaces are not divided by walls, or other physical barriers, giving 420 Broadway the appearance of one large store.  Arnold Decl., ¶ 3.
[10] Decl. of Jae Man Yoo, filed in Supp. of PSK Defs' Opp'n ("Yoo Decl."), dated Aug. 1, 2007, ¶ 11; Arnold Decl. ¶ 3.
[11] Yoo Decl. ¶ 3; *see also* Decl. of Heidi Garfield in Supp. of Pls' Reply to PSK Def' Opp'n ("Garfield Decl."), dated Aug. 2, 2007, at ¶ 2, Ex. A.
[12] *See generally* Supp. Yoo Decl.
[13] Garfield Decl. at ¶ 4, Ex. C.
[14] *See* Yoo Decl. at ¶ 17, Ex. F; *see also* Garfield Decl. at ¶ 3, Ex. B.

sufficiently serious questions going to the merits to make them a fair ground for litigation with

the balance of hardships tipping decidedly in favor of the party requesting preliminary relief.[15]

As shown below, Plaintiffs meet the preliminary injunction criteria with respect to the PSK

Defendants.[16]

## A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST THE PSK DEFENDANTS

To prevail on their claim of trademark infringement, Plaintiffs must demonstrate that they

own Plaintiffs' Marks and that a likelihood of confusion will result from the PSK Defendants'

conduct.[17] The PSK Defendants do not dispute Plaintiffs' ownership of Plaintiffs' Marks. The

PSK Defendants argue only that they did not take part in the counterfeiting business discovered

by Plaintiffs at the PSK Defendants' premises.

Plaintiffs' TRO Application and initial Reply specifically identify sales of Counterfeit

Products at PSK Defendants' location, in a shared space with PSK Defendants. PSK Defendants

knowingly provide services for Lin to complete credit card sales of Counterfeit Products. PSK

Defendants' involvement with Lin and the sale of Counterfeit Products has continued over time

even with PSK Defendants' knowledge of Lin's prior counterfeiting activities with Louis

Vuitton.[18] It is simply without any credibility that, knowing of Lin's prior problems with

counterfeit bags, PSK Defendants assumed that Lin's latest inventory of branded products were

genuine. To the contrary, given PSK Defendants' and Lin's prior issues with counterfeits of

branded handbags, PSK Defendants are held to a higher standard of knowledge. Nothing except

---

[15] *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995). This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979).

[16] As the PSK Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).

[17] *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486, 489090 (2d Cir. 1988).

[18] *See* Yoo Decl. at ¶ 17 and Ex. F; *see also* Garfield Decl. at ¶ 3, Ex. B.

an incredible denial has been offered to the Court to refute Plaintiffs' evidence of PSK

Defendants' involvement. Despite the PSK Defendants' continued protestations of innocence,

Plaintiffs are likely to succeed in proving that the PSK Defendants are liable for trademark

infringement, thus a preliminary injunction should be entered against them.

### B. ALTERNATIVELY, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST THE PSK DEFENDANTS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

Although Plaintiffs offer ample evidence to support a finding of likelihood of success on

the merits of showing that PSK Defendants are directly liable to Plaintiffs for trademark

counterfeiting and infringement, it is equally true that PSK Defendants are liable for contributory

infringement and counterfeiting. "Liability for trademark infringement can extend beyond those

who actually mislabel goods with the mark of another."[19] This Court has recognized "that one

may be held liable as a contributory infringer, not withstanding the fact that one does nothing to

assist an infringing party."[20] Since a seller bears strict liability for violations of the Lanham Act,

even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark

infringement -- intent is not required. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*,

123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). A contributor who knew or had reason to know of

the Lanham Act violations or was "willfully blind" to the violations is liable for trademark

infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996). To be

willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. *See Gucci*

*Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004). PSK

---

[19] *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also, Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce"); *Carter Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *3 (S.D.N.Y. Apr. 17, 2003) (finding an indirect actor liable for trademark counterfeiting when the party knew or had reason to know it was engaging in trademark infringement).
[20] *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982).

Defendants, even if not directly involved in the sale of the Counterfeit Products, remain liable for contributory trademark infringement.

Despite open and obvious evidence of trademark counterfeiting at 420 Broadway, and involvement in previous litigations, PSK Defendants continued to collect rent in cash from their counterfeiting sub-tenant.[21]  PSK Defendants aided and abetted their cohorts' counterfeiting by offering their credit card processing services to Lin and others.[22]  These activities were in plain sight of the PSK Defendants whose retail space is adjacent to Lin's.[23]  For all these reasons PSK Defendants are surely directly liable but without any doubt, given their arguable election to be willfully blind to the counterfeiting business operated by their subtenants under the circumstances described herein, are contributory counterfeiters and infringers.

Aside from their activities in aiding and abetting the sale of Counterfeit Products through providing credit card facilities, landlords, such as the PSK Defendants, have been found contributorily liable for the acts of trademark infringement committed directly by their tenants. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). The circumstances described above fall well within the *Fonovisa, supra* walls.

In addition, the PSK Defendants cannot contractually escape liability for contributory infringement.[24]  PSK Defendants' sub-lease agreement with Lin that prohibits sales of Counterfeit Products under the terms of the lease does not eliminate PSK Defendants' tort liability.  Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against the PSK Defendants and are entitled to a preliminary injunction.

---

[21] Yoo Suppl. Decl. ¶ 6.

[22] Yoo Decl. ¶ 11.

[23] Arnold Decl. ¶ 3.

[24] *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 203 (3d Cir. 2004) (contract exclusion does not apply to tort claims); *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970).

## II.  PLAINTIFFS ARE ENTITLED TO CONTINUED ASSET RESTRAINT AS TO THE PSK DEFENDANTS AND SUCH RESTRAINT IS NOT WRONGFUL

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs ultimately will be entitled to an equitable accounting of PSK Defendants' profits from their counterfeiting operations.[25] 15 U.S.C. § 1117. PSK Defendants do not dispute Plaintiffs' ultimate remedy here, in fact they agree to Plaintiffs' restraint to certain PSK funds.[26]  In determining whether to issue an order restraining a defendant's assets, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if their assets were not frozen.  *Reebok*, 737 F. Supp. at 1524, 1527. As demonstrated in Plaintiffs' Application for TRO and initial reply, Plaintiffs will likely succeed on the merits of their claims, and are incurring immediate and irreparable injury as a result of PSK Defendants' counterfeiting activities.  Further, the knowledge of the PSK Defendants' and willful blindness toward rampant counterfeiting, described above, tends to favor the conclusion that they would likely hide their assets, thereby rendering an accounting meaningless.

Additionally, PSK Defendants are not entitled to a full release of their currently restrained assets.  The plain language of the TRO, which Plaintiffs seek incorporation of in a preliminary injunction, requires PSK Defendants to provide uncontradicted documentary proof accepted by Plaintiffs that particular assets are not proceeds of the defendant's counterfeiting

---

[25] Courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless.  *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark.").

[26] *See*, Suppl. Mem. of Law in Opp'n to Prelim. Inj. and for Dissolution and Modification of Court's Orders as to P.S.K. America, Inc. and Jae Man Yoo, at 4.

activities or can be deemed substituted assets for the proceeds of the defendant's counterfeiting activities to merit a release from the asset restraint.[27]   Instead, PSK Defendants merely cite to "cash deposits" and funds deposited by Yoo's wife with no explanation as to the exact origin of the restrained assets.[28]   In fact, the PSK Defendants surmise that a substantial amount of the restrained assets may be attributed to rent paid by Lin, likely originating in Lin's sales of Counterfeit Products.[29]   Rather than meet the burden of the TRO, PSK Defendants essentially identify certain funds which were generated by sales of the Counterfeit Products, without providing documentary proof to support their conclusion that the remainder of the restrained assets are not related.

Unless a full and complete accounting is conducted, as provided by Section 35 of the Lanham Act, the asset restraint must continue against the PSK Defendants.  *See* 15 U.S.C. § 1117.  Since the funds are merely restrained, not attached, and Plaintiffs' proposed preliminary injunction provides for release of funds on certain grounds, the balance of equity favors Plaintiffs, and PSK Defendants are not harmed.  *See Reebok Int'l Ltd.*, 737 F. Supp. at 563. Accordingly, the grant of an injunction restraining the transfer of the PSK Defendants' assets was and will continue to be proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to deny the PSK Defendants' requested relief of releasing of PSK Defendants' restrained assets and an award of damages, and grant Plaintiffs' request for entry of a preliminary injunction against the PSK Defendants in the form contained in the TRO.

---

[27] TRO at 10.
[28] Supp. Yoo Decl. ¶ 6.
[29] Supp. Yoo Decl. ¶ 6; Yoo Decl. ¶ 22, Ex. H (demonstrating Lin's monthly rent is $6500).

Dated: New York, New York
   August 9, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By: _____

Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
James Donoian (JD 9052)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
MetLife Building
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Katherine Compton
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone:  (214) 665-3660
Facsimile:  (214) 665-5960
*Pro Hac Vice Pending*
*Attorneys for Plaintiffs*
*Chloé, S.A.S., J. Choo Limited*