Pak & Whang PC
Tae Hyun Whang (TW-9226)
12 West 32nd Street
Suite 1200
New York, NY 10001
Tel: (212) 239-2378
Fax: (212) 239-8732

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

| | |
|---|---|
| CHLOE, S.A.S., J. CHOO LIMITED, | Case No.: 07 CIV 6491 |
| Plaintiffs, | |
| -against- | |
| KEN CHEN a/k/a SHU CHEN a/k/a XIANG CHEN, DANIEL DOE, GODDESS TRADING d/b/a GODDESSTRADING@HOTMAIL.COM, LUXUNG GOODS, LUXURY GOODS, TERRY DOE d/b/a AZNTERRY911@HOTMAIL.COM, JASON DOE d/b/a JARRY326@YAHOO.COM.CN, FASHION HANDBAGS, BENNY DOE, JEANCARLO DOE, JOSHEPH a/k/a JOSE DOE, SISI a/k/a CECI DOE, TOP LUXURY HANDBAGS d/b/a LUXURYHANDBAGS277@YAHOO.COM, FRANCISCO DOE, BEN DOE, CARLOS DOE, INSTYLE LUXURY HANDBAGS, CORINA DOE a/k/a QIMIAO HU a/k/a QI MIAO HU, KENNY DOE a/k/a YE GUO a/k/a GUO Q YE, NEWCOME TRADING d/b/a TOSCA, QUICK GLOBAL SHIPPING, HOWARD EXPRESS SHIPPING, RANDY DOE, and various JOHN and JANE DOES 1-10 and XYZ COMPANIES (UNIDENTIFIED), | MEMORANDUM OF LAW IN OPPOSITION TO PRELIMINARY INJUNCTION AND FOR DISSOLUTION AND MODIFICATION OF COURT'S ORDERS AS TO PSK AMERICA, INC. AND JAE MAN YOO |
| Defendants. | |

-----------------------------------------------------------------X

P.S.K. AMERICA, INC. ("PSK") and JAE MAN YOO ("Yoo"), two of the unidentified defendants referred in the caption as "XYZ Companies" and "John and Jane Does 1-10," by their attorneys PAK & WHANG PC, submit this Memorandum of Law in opposition to CHLOÉ, S.A.S. and J. CHOO LIMITED (collectively, the "Plaintiffs")'s Order to Show Cause for a preliminary injunction and for dissolution and modification of the Court's Temporary Restraining Order, Seizure Order, Order Restraining the Transfer of Assets and Expedited Discovery Order as to PSK and Yoo.

## PRELIMINARY STATEMENT

PSK conducts a retail costume jewelry and hair extension business at 420 Broadway also known as 277 Canal Street, Store G, New York, NY 10013 (the "Premises"). Yoo is PSK's sole shareholder, director, officer and employee.

Except the fact that PSK subleases the business Premises and allows the use of PSK's credit card machine to Yu Lin ("Lin"), the defendant identified as "Benny Doe" in the caption, PSK and Yoo have no relationship with or ties to Lin or any other alleged infringers of Plaintiffs' trademarks named defendants in this action. PSK owns and operates a separate business entity which sells costume jewelry and hair extension products. PSK and Yoo do not sell any belts, sunglasses, t-shirts or handbags. PSK and Yoo do not engage in making, distributing, selling or otherwise dealing in any counterfeit goods infringing trademarks including those owned by the Plaintiffs. PSK and Yoo are not named defendants in this action.

Nevertheless, Plaintiffs, through their agents, simply walked into the Premises on the morning of July 20, 2007, armed with various orders signed by the Court, and proceeded to seize records and freeze bank accounts without regards to which business the records and accounts belonged. PSK and Yoo's explanation and protest were ignored. As the result, PSK and Yoo's

business was seriously disrupted and they suffered damages, costs and expenses, including reasonable attorney's fees.

In light of the above, the Temporary Restraining Order, Seizure Order, Order Restraining the Transfer of Assets and Expedited Discovery Order must be dissolved and the Preliminary Injunction applied for by the Plaintiffs denied as to PSK and Yoo. Alternatively, in the event the Court does not dissolve the restraining Orders or deny Plaintiffs' Preliminary Injunction, PSK and Yoo respectfully request that this Court modify its Orders to allow PSK and Yoo to make necessary payments from bank accounts which have been frozen. In addition, PSK and Yoo request that the Court award them damages, costs and expenses, including reasonable attorney's fees.

## BACKGROUND FACTS

On or about March 22, 2006, PSK entered into a lease agreement with 277 Assoc. LLC (the "Landlord") to lease the Premises located in Chinatown, New York. Since the commencement of the lease, PSK has been operating a small retail store which sells costume jewelry and hair extensions at the Premises. Yoo is PSK's sole shareholder, director, officer and employee.

As is prevalent in Chinatown, the Premises is shared by numerous merchants. PSK uses the southeastern portion of the Premises to conduct its business and subleases the remainder of the Premises to four (4) subtenants: Sakawat (a subtenant who sells belts and perfumes); Au (a sub-subtenant who sells watches); and Lin a/k/a "Benny Doe" (a subtenant who sells handbags). Each occupant at the Premises (PSK and each subtenant) operates their own business independent of one another.

Because PSK is the only occupant at the Premises which leases a credit card machine, PSK allows all of its subtenants to make use of the credit card machine. However, PSK does not make a profit when subtenants use its credit card machine. When charges are made on the credit card machine by subtenants, PSK would wait 2 to 3 weeks to make sure the charges are not returned by the credit card company. When PSK is paid by the credit card company, it would give its subtenant the charged amount, less 3.5% as an offset for fees charged by the credit card companies and for the cost of renting the credit card machine and telephone line. Beyond maintenance of the credit card machine, however, neither PSK nor Yoo is involved in any of the subtenants' businesses.

Lin subleases the northeastern portion of the Premises and sells handbags. Lin, as a subtenant, has two month-to-month subleases with PSK. The two subleases were originally entered into by Lin and Suzy Palace, Inc. (the former over-tenant) in December, 2005 and January, 2006, respectively, and were continued on a month-to-month basis when PSK became the new over-tenant.

The subleases between PSK and Lin specifically provide that Lin cannot sell counterfeit goods. Neither PSK nor Yoo is involved in any manner with the sale, manufacture or distribution of counterfeit goods. Nor do they allow the subtenants to sell counterfeit merchandise out of the Premises. Through provisions in subleases and warnings, PSK and Yoo use their best efforts to prevent subtenants from engaging in such infringing activities at the Premises. PSK and Yoo had no knowledge that Lin was selling counterfeit handbags bearing the Plaintiffs' trademarks.

The first notice PSK and Yoo had that Lin might be selling goods infringing Plaintiffs' trademarks from the Premises was on July 20, 2007 when Plaintiffs and their agents came to the

4

Premises, served Yoo with the Complaint, Temporary Restraining Order, Seizure Order, Order Restraining the Transfer of Assets, Order for Expedited Discovery and Order to Show Cause for Preliminary Injunction and confiscated some handbags from the Premises. The confiscated handbags belong to Lin.

Plaintiffs also seized many documents and placed holds on bank accounts indiscriminately without regards to whom the documents and bank accounts belonged. Yoo explained to Plaintiffs' agent that PSK was a separate business entity selling only costume jewelry and hair extension products, but the agent ignored Yoo's explanations and protest and went through all of PSK's business and Yoo's personal records. Plaintiffs mingled Lin's handbags and documents with PSK and Yoo's documents and seized a box full of records.

Consequently, PSK suffered and continues to suffer serious damages to its business, credit and reputation. Most importantly, because all bank accounts are frozen, PSK cannot pay its vendors or meet other obligations as they become due. Plaintiffs also placed holds on Yoo's personal bank accounts and Yoo is unable to pay for even the most basic needs.

## ARGUMENT

I. **PLAINTIFFS ARE NOT ENTITLED TO RESTRAINING ORDERS OR PRELIMINARY INJUNCTION AS TO PSK AND YOO BECAUSE PSK AND YOO DID NOT DIRECTLY OR INDIRECTLY INFRINGE PLAINTIFFS' TRADEMARKS**

In <u>Malletier v. Burlington Coat Factory Warehouse Corp.</u>, the Second Circuit held that in order to obtain a preliminary injunction, a plaintiff must establish "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on

the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in its favor." 426 F.3d 532, 537 (2005).

PSK and Yoo do not contest Plaintiffs' argument that Plaintiffs would be irreparably harmed by infringement of their trademarks. What PSK and Yoo do contest, however, is the argument that Plantiffs are likely to prevail on their claims of trademark infringement as against PSK and Yoo.

As shown by Yoo's Affidavit and Exhibits, except for the fact that PSK subleases part of the business Premises and a credit card machine to Lin, PSK is an entirely separate business entity with no relationship or ties to Lin or any other alleged infringers of Plaintiffs' trademarks named defendants in this action. Moreover, Plaintiffs did not name PSK or Yoo as defendants in this action.

PSK and Yoo own and operate a retail costume jewelry and hair extension shop. Costume jewelry and hair extension products are the only goods they distribute, sell or otherwise deal in. PSK and Yoo do not sell any belts, sunglasses, t-shirts or handbags, let alone counterfeit belts, sunglasses, t-shirts or handbags bearing Plaintiffs' trademarks. Plaintiffs did not provide any evidence showing that PSK and Yoo are directly infringing their trademarks and absent such evidence, they are not entitled to the harsh restraining orders or preliminary injunction against PSK and Yoo.

Nor are Plaintiffs likely to succeed in proving that PSK and Yoo are liable for contributory trademark infringement. Even though it is established that a party who "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement" the party may be contributorially responsible, PSK and Yoo neither intentionally induced Lin to infringe

Plaintiffs' trademarks nor knew or had reason to know that Lin was engaging in infringement of Plaintiffs' trademarks. <u>Inwood Laboratories, Inc. v. Ives Laboratories, Inc.</u>, 456 U.S. 844, 854 (1982).

In <u>Hard Rock Cafe Licensing Corporation v. Concession Services, Inc.</u>, the Seventh Circuit held that a landlord may be contributorially liable for trademark infringement under the Inwood doctrine if the landlord knew or had reason to know of its tenant's infringing activities at the rented premises. 955 F.2d 1143, 1149 (1992). The Seventh Circuit cautioned, however, that the "knowledge" or "reason to know" in this context was a subjective standard. <u>Id.</u> at 1151. In other words, Plaintiffs carry the burden of proving that PSK and Yoo actually knew or suspected Lin's wrongdoing but deliberately failed to investigate. <u>Id.</u> at 1149. So far, Plaintiffs have not produced any evidence showing actual knowledge or willful blindness on the part of PSK and Yoo. Nor are they likely to produce such evidence because PSK and Yoo did not have any knowledge of the alleged infringing activities of Lin. Furthermore, PSK and Yoo did not suspect Lin to be infringing on Plaintiffs' trademarks.

PSK and Yoo have clearly shown the Court that Plaintiffs are not likely to prevail on their claims of direct or indirect trademark infringement as against PSK and Yoo. In the event the Court finds, however, that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, the balance of hardships does not tip decidedly to Plaintiffs' favor. On the contrary, it tips decidedly to PSK and Yoo's favor.

Plaintiffs are large companies with deeper pockets and more resources than those available to a small retail business and its sole owner. Plaintiffs are abusing their advantage of size to intimidate and bully their smaller, less powerful, innocent counterparties. Plaintiffs have not presented one shred of evidence showing that PSK or Yoo is directly or indirectly infringing

their trademarks and yet they seize any properties and confidential, personal information they please and place holds on innocent parties' bank accounts. Plaintiffs post a security in the amount of mere $50,000.00 and yet they freeze the entire lifeblood of PSK and Yoo.

As the result of Plaintiffs' wrongful seizure of PSK and Yoo's properties, PSK and Yoo have suffered serious damages to their business, credit and reputation. PSK is not able to pay its suppliers and vendors and meet other obligations such as payments of rent and utilities as they become due. Yoo cannot make payments for his daughter's tuition, his own rent, car payments, and food. This is not, by any means, a "slight potential for monetary harm" as Plaintiffs characterize. While Plaintiffs have the right to protect their trademarks and goodwill, they have no right to trample on innocent third-parties and harm their goodwill and good names in the process.

Based on the foregoing, the Temporary Restraining Order, Seizure Order, Order Restraining the Transfer of Assets and Expedited Discovery Order must be dissolved and the Preliminary Injunction applied for by the Plaintiffs denied as to PSK and Yoo. Alternatively, in the event the Court does not dissolve the restraining Orders or deny Plaintiffs' Preliminary Injunction, the Orders should be modified to allow PSK and Yoo to make necessary payments from bank accounts which have been frozen.

## II. PSK AND YOO ARE ENTITLED TO DAMAGES ARISING FROM PLAINTIFFS' WRONGFUL SEIZURE

15 U.S.C. Section 1116(d) specifically provides a cause of action for "a person who suffers damage by reason of a wrongful seizure . . . against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good-will, and punitive damages in

instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee."

As shown above, Plaintiffs were put on notice as to the distinctive, independent nature of PSK from the businesses operated by Lin or any other subtenants at the Premises. Nonetheless, Plaintiffs proceeded to mingle PSK and Yoo's properties with those of Lin and wrongfully seized documents and put holds on bank accounts. The documents seized included confidential attorney-client privileged materials as well as personal, health-related information. Among the accounts frozen were Yoo's personal bank accounts. As the consequence, PSK and Yoo's business was seriously disrupted and they suffered and continue to suffer grave damages including lost profits, loss of good-will, loss of good name and costs and expenses including attorneys' fees. Pursuant to 15 U.S.C. § 1116(d), PSK and Yoo respectfully ask the Court to order Plaintiffs to compensate PSK and Yoo for the damages sustained.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Court enter an order (1) denying Plaintiffs' application for a preliminary injunction as to PSK and Yoo, (2) immediately releasing bank accounts belonging to PSK and Yoo and (3) awarding damages, costs and expenses, including reasonable attorney's fees to PSK and Yoo and (4) granting any further relief that this Court deems just and proper. Alternatively, it is respectfully requested that this Court modify its order to allow PSK and Yoo to make necessary payments from bank accounts which have been frozen.

Dated:    New York, New York
          August 1, 2007

                                                   _____
                                                   Pak & Whang PC
                                                   By: Tae Hyun Whang (TW-9226)
                                                   Attorneys for Defendants
                                                   P.S.K. America, Inc. and Jae Man Yoo
                                                   Office and P.O. Address
                                                   12 West 32nd Street
                                                   Suite 1200
                                                 New York, NY 10001
                                                 (212) 239-2378