7/04

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

**Agreement of Lease,** made as of this ⟋⟋⟋ day of March in the year 2006 , between
277 Associates, LLC, with an office at 430 West Broadway, New York, New York 10012
party of the first part, hereinafter referred to as OWNER, and/or "Landlord"
PSK America, Inc., with an office at 277 Canal Street, Store "G", New York, New York
10013                                                 party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner
Store "G" (not including the basement) as set forth in the attached
diagram as Exhibit 1, (hereinafter the "Premises")

in the building known as 277 Canal Street (hereinafter the "Building")
in the Borough of Manhattan             , City of New York, for the term of one (1) year

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
1st day of April               in the year 2006                    , and to end on the
31st day of March              in the year 2007                          , and
both dates inclusive, at the annual rental rate of

### As set forth in Article 40

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever, except that Tenant shall pay the first          monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributes, executors, administrators, legal representative, successors and assigns, hereby covenant as follows:

**Rent:**           1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:**      2. Tenant shall use and occupy the demised premises for

### As set forth in Article 79

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:**        3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, commercial general liability, personal and property damage insurance as Owner may require. If an mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:**          4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of the lease, take good care of the demised premises (including, without limitation, the storefront) and

the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:**       5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:**       6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or

which shall or might subject Owner to any liability or responsibility to any person, or for property damage. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease, or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by a body making fire insurance rates applicable to said demised premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate than applicable to said demised premises.

**Sub-ordination:**  **7.** This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:**  **8.** Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or other wise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain commercial general liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession of the demised premises and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefore, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefore. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease or by the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:**  **9.** (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by the Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall be not more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other

casualty. Notwithstanding anything contained to the contrary in subdivisions (a) through (e) hereof, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**  **10.** If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of this lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:**  **11.** Tenant, for itself, its heirs, distributes, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority interest in any partnership or other legal entity which is tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:**  **12.** Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonable exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no way make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:**  **13.** Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the demised premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes, ducts, and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants, and may, during said six months period, place upon the demised premises the usual notice "to Let" and "For Sale", which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible, by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render owner or its agents liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other

JY

public parts of the building, and to change the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:** 14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them "as-is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant (or a guarantor of any of Tenant's obligations under this lease) as the debtor; or (2) the making by Tenant (or a guarantor of any of Tenant's obligations under this lease) of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security deposit hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder, or if Tenant shall be in default with respect to any other lease between Owner and Tenant; or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) day notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration from such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorney's fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceable and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**

23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**

24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the demised premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:**

25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commence any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:**

26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations or decorations, or is unable to supply, or is delayed in supplying, any equipment, fixtures or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:**

27. Except as otherwise in this lease provided, any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail (express mail, if available), return receipt requested, or by courier guaranteeing overnight delivery and furnishing a receipt in evidence thereof, addressed to the other party at the address hereinabove set forth (except that after the date specified as the commencement of the term of this lease, Tenant's address, unless Tenant shall give notice to the contrary, shall be the building), and shall be deemed to have been given, rendered or made (a) on the date delivered, if delivered to Tenant personally, (b) on the date delivered, if delivered by overnight courier or (c) on the date which is two (2) days after being mailed. Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demand or other communications intended for it. Notices given by Owner's managing agent shall be deemed a valid notice if addressed and set in accordance with the provisions of this Article. At Owner's option, notices and bills to Tenant may be sent by hand delivery.

---

**Water Charges:**

28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of the Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter, as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises, or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month.

☞ _____ % ($ _____ ) of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:**

29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office, or any bureau, department or official of the federal, state or city government, require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required, whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the ☞ sum of $ _____ on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:**

30. ~~As long as Tenant is not in default under any of the covenants of this lease beyond~~ the ~~applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish~~ heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 pm. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and if the demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, keep said sidewalks and curbs free from snow, ice, dirt and rubbish and maintain said sidewalks in a reasonably safe condition in compliance with requirements of law. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.



**Security:**

31. Tenant has deposited with Owner the sum of $ 63,000 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the case of every such use, application or retention, Tenant shall, within five (5) days after demand, pay to Owner the sum so used, applied or retained which shall be added to the security deposit so that the same shall be replenished to its former amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.



**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales or conveyance, assignment or transfer of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building, or of the land and building, that the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work, as said person shall deem necessary, to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall

not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. XXXXX Tenant shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefore shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as a so called rubber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, stating whether or not there exists any defaults by owner under this lease, and, if so, specifying each such default and such other information as shall be required of Tenant.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributes, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

277 Associates, LLC

by:

Albert Laboz

PSK America, Inc.=

Witness for Tenant:

by:

Jae Mon Yoo

## ACKNOWLEDGEMENT

**STATE OF NEW YORK,**

**SS.:**

**COUNTY OF**

On the _____ day of _____ in the year _____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
**NOTARY PUBLIC**

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives, and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement, shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the lease. As a further inducement to Owner to make the lease, Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the lease or of this guaranty, that Owner and the undersigned shall and do waive trial by jury.

Dated:. . . . . . . . . . . . . . . . . . . . . . . . in the year . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Witness

Guarantor's Residence

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Business Address

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Firm Name

STATE OF NEW YORK        )        ss.:

COUNTY OF        )

On the        day of        in the year before me, the undersigned, a Notary Public in and for said State, personally appeared
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Notary

 **IMPORTANT – PLEASE READ** 

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the demised premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations, or interfere in any way with other tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or fixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6. Tenant shall not mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom it requests such pass, and shall be liable to Owner for all acts of such person.

9. Owner shall have the right to prohibit any advertising by Tenant which, in Owner's opinion, tends to impair the reputation of Owner or the building's desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors, to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which was designated to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in such setting sufficient in Owner's judgment to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash – Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

Address

Premises

TO

**STANDARD FORM OF**

*Store Lease*

The Real Estate Board of New York, Inc.
Copyright 2004. All rights Reserved.
Reproduction in whole or in part prohibited.

Dated

Rent Per Year

Rent Per Month

Term
From
To

in the year

Drawn by . . . . . . . . . . . . . . . . . . . . . . .

Checked by . . . . . . . . . . . . . . . . . . . . . . .

Entered by . . . . . . . . . . . . . . . . . . . . . . .

Approved by . . . . . . . . . . . . . . . . . . . . . . .

RIDER ATTACHED TO AND FORMING PART OF LEASE

DATED:    March 2 2, 2006

LANDLORD: 277 Associates, LLC

TENANT:   PSK America, Inc.

PREMISES:    277 Canal Street, Store "G", New York, New York

40.  RENT

During the term of this Lease, Tenant shall pay fixed annual rent to Landlord at the following rental rates (hereinafter the "Fixed Rent"), in equal monthly installments in advance on the first day of each month.

April 1, 2006 to March 31, 2007
$252,000 per annum; $21,000 per month

It is understood and agreed that even if Landlord is unable to tender possession of the Premises to Tenant on or before April 1, 2006 because the prior tenant and subtenants have not yet vacated and/or been evicted, rent shall be due commencing April 1, 2006. It is a substantial condition of this Lease that Landlord has no obligation to tender possession of the Premises to Tenant until such time that Landlord evicts the current tenant and obtains possession of the Premises. Landlord shall, upon obtaining possession of the Premises, give possession of the Premises to Tenant immediately thereafter, provided the full security deposit as well as the first month's rent has been paid.

41.  PREMISES

The premises are defined as "Store G" in the building known as and located at 277 Canal Street, New York, New York, as more fully set forth on the attached diagram as Exhibit 1 (the "Premises") and specifically does not include the basement or any portion thereof.  At any time during this lease term, on 15 days notice to Tenant Landlord may notify Tenant of its intent to reduce the size of the Premises as set forth on the attached diagram as Exhibit 2 (the "New Premises") and of Tenant's obligation to vacate the portion of the Premises not included in the New Premises.  In the event Tenant fails to vacate the portion of the Premises which is not included in the New Premises within said fifteen (15) day period, it shall be deemed a material breach of this Lease and Landlord may terminate this Lease on five (5) days notice to Tenant.  In the event such notice is given, this Lease and the Term and estate hereby granted shall terminate upon the expiration of said five (5) days with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided in Article 18.

If Landlord reduces the size of the Premises, it shall be done at Landlord's expense, with minimal disruption to Tenant's business and done as quickly as possible.  Landlord shall install a new wall to delineate the Premises from the New Premises which wall shall be the same or similar to that currently existing at the Premises, including installing the display board similar to that currently existing on the wall at the Premises.  If necessary, Landlord shall move the heater and air conditioning unit to the New Premises.  Landlord shall relocate the bathroom to the space under the stairway or such other location as is mutually agreed upon by Landlord and Tenant.  In the event Landlord reduces the size of the Premises, Tenant shall coordinate with Landlord to

Landlord's initials _____

Tenant's initials _____

facilitate the reduction of space, including the construction involved, and Tenant shall cooperate fully with Landlord

In addition, Landlord may relocate the stairway that is located contiguous to Tenant's Premises at the northernmost end of Tenant's Premises so that it is further north of Tenant's Premises and will do so with minimal disruption to Tenant's business as quickly as possible. Tenant shall coordinate with Landlord to facilitate the relocation of the stairway and cooperate fully with Landlord regarding same.

If Landlord reduces the size of the Premises as set forth on Exhibit 2, the fixed rent shall be reduced to $17,000 per month commencing on the date said Premises is reduced to the New Premises.

## 42. RIDER CONTROLS

All of the provisions contained in this Rider are hereby incorporated and deemed to be a part of the printed portion of this Lease. In the event of any discrepancies between this Rider and the printed portion of this Lease, the Rider will control.

## 43. UTILITIES & SERVICES

A. It is specifically understood and agreed that Landlord shall not be required to furnish or provide water, sewer, heat, hot water, air-conditioning, sprinkler system, gas, fuel, cleaning service, exterminating services, garbage removal, snow removal or any other kind of service or utility in or to the Premises.

B. Tenant shall pay $400 per month for electric use as additional rent, due on or before the first day of the month. Tenant agrees to make its own arrangement with the public utility company servicing the Premises for the furnishing or the payment of all charges for gas and other utilities consumed in the Premises, including, if necessary, the installation of meters therefore. In no event, shall Landlord be responsible for charges for gas or any other utility consumed in the Premises. Interruption or curtailment of any such services including electricity shall not constitute a constructive or partial eviction, nor entitle Tenant to any compensation or abatement of rent. Tenant covenants and agrees that at all times its use of electric energy shall never exceed the capacity of the existing feeders to the Building or of the risers or wiring installations. Tenant shall make no alterations or additions to the electrical equipment in the Building without the prior written consent of Landlord, which shall not be unreasonably withheld.

C. Tenant has fully inspected the Premises and accepts it in "AS IS" condition. Landlord makes no representations of any kind.

## 44. TENANT'S INSURANCE

A. Tenant shall obtain and provide, on or before the earlier of the commencement of the term or Tenant's entering the demised premises for any purpose, and keep in force at all times thereafter, the following insurance coverage with respect to the demised premises:

- 2 -

Landlord's initials _____ ℓ𝒰

Tenant's initials _____ 𝒜𝑓

(i)    Commercial    General    Liability    Insurance,    with
contractual    liability    endorsement,    relating    to    the
demised    premises    and    their    appurtenances    on    an
occurrence    basis    with    a    minimum    single    limit    of    Two
Million ($2,000,000.00) Dollars.

(ii) Workmen's Compensation Insurance, covering all persons
employed, directly or indirectly, in connection with
any finish work performed by Tenant or any repair or
alteration authorized by this Lease or consented to by
Landlord, and all employees and agents of Tenant with
respect to whom death or bodily injury claims could be
asserted against Landlord or Tenant, as required by the
law of the State where the demised premises is located.

(iii)    Plate Glass Insurance

B.    Before    undertaking    any    alterations,    additions,
improvements or construction, Tenant shall obtain at its expense a
public liability insurance policy insuring Tenant and Landlord
against any liability which may arise on account of such proposed
alterations,    additions,    improvements    or    construction    on    an
occurrence basis with the minimum limits set forth in paragraph
44.A (i) above.

C.    All of the aforesaid insurance except the Workmen's
Compensation Insurance required by paragraph 44.A(ii) above shall
name Landlord (and any designee(s) of Landlord) as an additional
insured, and such insurance shall be primary over Landlord's
insurance.    Such insurance may be carried under a blanket policy
covering the demised premises and any other of Tenant's stores;
all such insurance shall contain endorsements that: (i) such
insurance may not be canceled or amended with respect to Landlord
(or its designee) except upon thirty (30) days prior written
notice to Landlord (and any such designee) by the insurance
company; (ii) Tenant shall be solely responsible for payment of
premiums and that Landlord (or its designee) shall not be required
to pay any premium for such insurance; and (iii) in the event of
payment of any loss covered by such policy, Landlord (or its
designees) shall be paid first by the insurance company for
Landlord's loss.    The minimum limits of the comprehensive general
liability policy of insurance shall in no way limit or diminish
Tenant's liability hereunder.    Tenant shall deliver to Landlord at
least thirty (30) days prior to the expiration of such policy,
either a duplicate original or a certificate of insurance on all
policies procured by Tenant in compliance with its obligations
hereunder, together with evidence satisfactory to Landlord of the
payment of the premiums therefore.    If Tenant fails to obtain and
provide any or all of the aforesaid insurance, then Landlord may,
but shall not be required to, purchase such insurance on behalf of
Tenant and add the cost of such insurance as Additional Rental
payable with the next installment of Fixed Rent.

D.    Tenant agrees to procure from the insurer of its
personalty    or    other    property    on    the    Premises,    a    waiver    of
subrogation against the Landlord. Landlord shall not be liable for
any    damage    by    fire    or    other    peril    included    in    the    coverage
afforded    by    the    standard    form    of    fire    insurance    policy    with
extended    coverage    endorsement    attached    (whether    or    not    such
coverage is in effect), no matter how caused, it being understood
that Tenant will look solely to its insurer for reimbursement.

- 3 -

Landlord's initials _au_

Tenant's initials _ell_

45.  GLASS REPLACEMENT

Tenant shall replace within forty-eight (48) hours any broken glass on the demised premises.  If glass is not replaced within forty-eight (48) hours, Landlord may, but shall not be obligated to replace broken glass and any and all costs incurred in said replacement shall be borne by Tenant.  Tenant shall be entitled to use plate glass insurance proceeds to replace such broken glass.


46.  TENANT'S WAIVER

Tenant covenants and agrees that in the event Landlord commences any action or summary proceeding for the recovery of possession of the Premises under the terms of this Lease, no setoffs or counterclaims will be interposed by Tenant.

47.  ASSIGNMENT

A.  If Tenant is a corporation (other than one whose shares are regularly and publicly traded on a recognized stock exchange), partnership or other entity other than an individual, Tenant represents that the ownership and power to vote the majority of its entire outstanding capital stock or other controlling interests belongs to and is vested in the person(s) executing this Lease.  Any transfer of said controlling interests in Tenant shall constitute an assignment and shall accordingly be subject to the restriction set forth herein.

B.  Tenant may not assign this Lease unless:

(1)  Tenant is not in default of this Lease;

(2)  Landlord's consent is obtained in each and every instance which will not be unreasonably withheld; and

(3)  Tenant shall deliver to Landlord an original written assignment and assumption agreement in form and substance satisfactory to Landlord, duly executed by assignor and assignee pursuant to which the assignee shall assume and agree to perform all obligations of Tenant hereunder.

C.  Any assignment or sublease of the Premises to which Landlord shall not have expressly consented to in writing shall be deemed null and void and of no force or effect.

D.  If Landlord shall recover or come into possession of the Premises before the date herein fixed for the termination of this Lease, Landlord shall have the right, at its option, to take over any and all subleases or sublettings of the Premises or any part thereof made by Tenant and to succeed to all the rights of said subleases and sublettings or such of them as it may elect to take over and have such subtenants attorn to Landlord.  Tenant hereby expressly assigns and transfers to Landlord such of the subleases and sublettings as Landlord may elect to take over at

- 4 -

Landlord's initials _____

Tenant's initials _____

the time of such recovery of possession, such assignment and transfer not to be effective until termination of this Lease or re-entry by Landlord hereunder of if Landlord shall otherwise succeed to Tenant's estate in the Premises, at which time Tenant shall upon request of Landlord, execute, acknowledge and deliver to Landlord such further instruments of assignments and transfer as may be necessary to vest in Landlord the then existing subleases and subletting.

48.  EXCULPATION

If the Landlord or any successor in interest is an individual, joint venture, tenancy in common, co-partnership, unincorporated association or other unincorporated aggregate of individuals or a corporation (all of which are referred to below), individually and collectively, as a "Landlord Entity") then anything elsewhere to the contrary notwithstanding, Tenant shall look solely to the estate and property of such Landlord Entity in the demised premises, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord. No other property or assets of Landlord Entity shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies. Nothing contained in this Article shall be construed to limit any rights to seek injunctive relief that may otherwise be available to Tenant.

49.  TENANT'S WORK

Tenant covenants and agrees that it shall completely and fully pay for at its own cost and expense, all alterations, improvements and additions necessary or required by Tenant to be made to conduct Tenant's business. It is specifically understood and agreed that all alterations, improvements, additions and fixtures (including but not limited to heating units, air conditioning units, bathroom facilities and lighting) shall immediately become the property of the Landlord, excepting however, Tenant's trade fixtures. Prior to the commencement of any alterations on behalf of the Tenant, Tenant shall provide Landlord waivers of mechanics' liens by all contractors doing work on the premises. Tenant further agrees that it will, at its own expense, obtain and maintain in full force and effect throughout the term of this Lease, or any extension or renewal thereof any and all permits, licenses and certificates required by any municipal or governmental authority of any kind having jurisdiction required in connection with the Tenant's business.

50.  MECHANICS' LIENS

Tenant shall not suffer any mechanics' or material men's liens to be filed against the demised premises or the building by reason of work, labor, services or materials performed or furnished to Tenant or anyone holding any part of the demised premised under Tenant. If any such lien shall at any time be filed as aforesaid, Tenant may contest the same in good faith, but notwithstanding such contest, Tenant shall, within fifteen (15) days after the filing thereof, cause such lien to be released of record by payment, bond, order of court of competent jurisdiction, or otherwise. In the event of Tenant's failure to release of record any such lien within the aforesaid period, Landlord may remove said lien by paying the full amount thereof or by bonding

- 5 -

Landlord's initials _____

Tenant's initials _____

or in any other manner Landlord deems appropriate without investigating the validity thereof and irrespective of the fact that Tenant may contest the propriety or the amount thereof, and Tenant, upon demand, shall pay Landlord the amount so paid out by Landlord in connection with the discharge of said lien, together with expenses incurred in connection therewith, including attorneys' fees. Nothing contained in this Lease shall be construed as consent on the part of Landlord to subject Landlord's estate in the demised premises to any lien or liability under the lien laws of the State in which the Building is located.

51. CONDITIONAL LIMITATION

    A. This Lease and the term and estate hereby granted are subject to the limitations that:

    (i)    if Tenant shall default in the payment when due of any installment of Fixed Rent or in the payment when due of any Additional Rent, and such default shall continue for a period of five (5) days after notice by Landlord to Tenant of such default; or

    (ii)    if Tenant shall use or occupy the demised premises in violation of the 'purpose' clause of this Lease, which shall be deemed a material default hereunder, and such default shall continue for a period of five (5) days after notice by Landlord to Tenant of such default; or

    (iii)    if Tenant shall default in the performance of any term of this Lease on Tenant's part to be performed (other than the payment of Fixed Rent and Additional Rent) and Tenant shall fail to remedy such default within five (5) days after notice by Landlord to Tenant of such default, or if such default is of such a nature that it cannot be completely remedied within said period of five (5) days if Tenant shall not (x) promptly upon the giving by Landlord of such notice, advise Landlord of Tenant's intention to institute all steps necessary to remedy such situation, (y) promptly institute and thereafter diligently prosecute to completion all steps necessary remedy the same, and (z) complete such remedy within a reasonable time after the date of the giving of said notice by Landlord; and in any event prior to such time as would either (i) subject Landlord or Landlord's agents, to prosecution for a crime or (ii) cause a default under a superior lease or a superior mortgage;

    (iv)    if Tenant, or any of Tenant's Guarantors, shall (x) make an assignment for the benefit of creditors, (y) file or acquiesce to a petition in any court (whether or not pursuant to any statute of the United States or any state) in any bankruptcy, reorganization, composition, extension, arrangement or insolvency proceedings, (z) make application in any such proceedings for or acquiesce to the appointment of a trustee or receiver for all of any portion or its property;

- 6 -

Landlord's initials   _____

Tenant's initials   _____

or

(v)    if any petition shall be filed against Tenant, or any of Tenant's Guarantors, to which neither of them acquiesce in any court (whether or not pursuant to any statute of the United States or any state) in any bankruptcy, reorganization, composition, extension, arrangement or insolvency proceedings, and (x) Tenant or any of Tenant's Guarantors shall thereafter be adjudicated a bankrupt, or (y) such petition shall be approved by any such court, or (z) such proceedings shall not be dismissed, discontinued or vacated in thirty (30) days; or

(vi)   if, in any proceeding, pursuant to the application of any person other than Tenant, or any Tenant's Guarantor to which neither or them acquiesce, a receiver or trustee shall be appointed for Tenant, or any Tenant's Guarantor or for all or any portion of the property of either and such receivership or trusteeship shall not be set aside within thirty (30) days  after such appointment;

then in any of said events Landlord may give to Tenant notice of intention to terminate this Lease to end the Term and the estate hereby granted at the expiration of three (3) days from the date of the giving of such notice, and, in the event such notice is given, this Lease and the Term and estate hereby granted (whether or not the Term shall have commenced) shall terminate upon the expiration of said three (3) days with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided in Article #18.

However, if Tenant shall default (i) in the timely payment of Fixed Rent or Additional Rent, and any such default shall continue to be repeated for two (2) consecutive months or for a total of four (4) months in any period of twelve (12) months or (ii) more than three (3) times in any period of six (6) months, in the performance of any other term of this Lease to be performed by Tenant, then, notwithstanding that such defaults shall have each been cured within the applicable period, if any, as above provided, any further repetition of the same default shall be deemed to be deliberate and Landlord thereafter may serve the said three (3) days notice of termination upon Tenant without affording to Tenant an opportunity to cure such further default.

B.    Nothing in this Article shall be deemed to require Landlord to give the foregoing notices prior to the commencement of a summary proceeding for nonpayment of rent or a plenary action for the recovery of rent, on account of any default in the payment of the same, it being intended that such notices are for the sole purpose of creating a conditional limitation hereunder pursuant to which this Lease shall terminate and if Tenant thereafter remains in possession or occupancy, it shall become a holdover Tenant.

52. BAD CHECKS

If Tenant shall issue a check to Landlord which is returnable unpaid for any reason, Tenant shall pay Landlord an additional charge of twenty-five ($25.00) Dollars for Landlord's expense in

- 7 -

Landlord's initials _____

Tenant's initials _____

connection therewith.

53.  INDEMNIFICATION

Tenant agrees to defend, indemnify and hold Landlord harmless from and against any claim or any loss, cost or expense (including attorneys' fees) for damage to any person or property in or upon the demised premises or any area allocated to or used exclusively by Tenant or its agent, employees, or invitees, arising out of Tenant's use or occupancy of said premises, or any act or neglect of Tenant or Tenant's servants, employees or agents, or any change, alteration or improvement made by Tenant in the demised premises or relating to any business or other activities conducted therein. The commercial general liability coverage maintained by Tenant pursuant to this Lease shall specifically insure the contractual obligations of Tenant as set forth in this Article and/or as provided in this Lease.

54.  CONSENTS

With respect to any provision of this Lease which provides in effect, that Landlord shall not unreasonably withhold or unreasonably delay any consents or any approval, Tenant, in no event, shall be entitled to make, nor shall Tenant make, any claim for and Tenant hereby waives any claim for, money damages by way of setoff, counterclaim or defense, based upon any claim or assertion by Tenant that Landlord has unreasonably delayed any consent or approval, but Tenant's sole remedy shall be an action or proceeding to enforce any such provisions or for specific performance, injunction or declaratory judgment.

55.  ATTORNEYS' FEES

Tenant agrees to pay to Landlord upon demand, as Additional Rent, a sum equal to all costs and expenses (including reasonable attorneys' fees, costs of investigation and disbursements) incurred by Landlord in enforcing any or all of its rights hereunder, specifically including the cost of collecting sums due through judicial proceeding, or levying and collecting on any judgment or arbitration award in Landlord's favor.

56.  STORE SIGNS

A.  Tenant may install a business sign provided that:

(a)  All permits and licenses are obtained; and

(b)  The sign is in compliance with all applicable governmental and municipal laws, regulations and ordinances; and

(c)  Landlord's consent is obtained, which will not be unreasonably withheld.

57.  NO BROKER

Tenant represents to Landlord that no broker brought about this transaction, and shall indemnify and hold Landlord harmless from any loss, liability, cost or expense (including reasonable

- 8 -

Landlord's initials _____

Tenant's initials _____

attorney's fees) resulting from a breach hereof.

58.  LIQUIDATED DAMAGES FOR LATE PAYMENTS

It is strictly understood by and between the parties that payment of rent is a substantial obligation of the Tenant. Therefore, in the event of a late payment of rent or any additional rent due hereunder, the Landlord shall be entitled to liquidated damages in addition to any other damages and any other remedies to which the Landlord may be entitled.  Tenant agrees that it shall pay to the Landlord six cents (.06) on every dollar ($1.00) that remains unpaid on the tenth day of any month.  For the purpose of this paragraph, if the payment remains unpaid for the tenth day of any succeeding month, the liquidated payment shall be again computed for that month, and similarly for each succeeding month until the such sum is fully paid.

59.  NOTICE

Whenever it is provided herein that notice, demand, request or other communication shall or may be given to or served upon either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any notice, demand, request or other communication with respect hereto or the demised premises, each such notice, demand, request or other communication shall be in writing and, any law or statute to the contrary notwithstanding, shall be effective for any purpose if given or served as follows:

(a)  If by Landlord, Landlord's agents, servants, employees, or attorneys, by serving same by hand or by mailing the same to Tenant by express, certified or registered mail, postage prepaid, or overnight courier addressed to Tenant at 277 Canal Street, Store "G", New York, New York 10013 or at such other address as Tenant may from time to time designate by notice given to Landlord by certified mail.

(b)  If by Tenant, by hand or by mailing the same to Landlord by express, registered or certified mail, postage prepaid, or overnight courier, addressed to Landlord at 430 West Broadway, New York  New York, 10012 or at such other address as Landlord may from time to time designate by notice given to Tenant by certified mail.

Every notice, demand, request or other communication hereunder shall be deemed to have been given or served the time that the same shall be deposited in the United States mails, or express mail carrier postage prepaid, in the manner aforesaid. Nothing herein contained however, shall be construed to preclude personal service of any notice, demand, request or other communication the same manner that personal service of a summons or other legal process may be made.

60.  WATER LEAKAGE

Tenant agrees, at its own cost and expense and for its own protection, to obtain sprinkler leakage insurance and water damage insurance.  Tenant hereby expressly releases Landlord from any liability by reason of any damage that may be caused by sprinkler

- 9 -

Landlord's initials _____

Tenant's initials _____

leakage or by any leakage from snow, ice, water pipe breakage, or water leakage emanating from any source. The rent payable by Tenant hereunder has been fixed taking into consideration the provisions of this Article, and there shall be no abatement as the result of conditions described herein.

61. REQUIREMENTS OF LAW

Tenant covenants and agrees at its own cost and expense, to make all repairs, alterations, additions or replacements necessary to comply with any present or future laws, regulations or insurance company requirements and recommendations.

62. HOLDOVER

Should Tenant holdover possession of the Premises subsequent to the expiration or early termination of this Lease, Tenant agrees to pay to Landlord, a daily rate that is equal to two and one half (2.5) times the Fixed Rent listed in the Lease (or renewal), immediately before the expiration of this Lease (or renewal).

63. EASEMENT

Tenant shall permit the Landlord and its designees to erect, use, maintain and repair pipes, cables, conduits, plumbing, vents and wires, in, to, under and through the Premises, as and to the extent that the Landlord may now or thereafter deem necessary or appropriate for the proper operation, maintenance and improvement of the Building in which the Premises are situated. All such work shall be done, so far as practicable, in such manner as to avoid unreasonable interference with Tenant's use of the Premises. In furtherance thereof, Landlord shall have access to the Premises at all reasonable hours, and in emergencies, at all times, (a) to inspect, (b) to make repair, additions or alterations to the Premises and (c) for any lawful purpose. If Landlord makes or causes any repairs to be made pursuant to the Lease, Landlord shall not be responsible to Tenant for any loss or damage that may accrue to Tenant's business by reason thereof. For the period commencing three (3) months prior to the end of the demised term, Landlord shall have reasonable access to the Premises for the purpose of exhibiting same to prospective tenants, installing the usual "To Let" signs, and/or preparing for any work to be done following the expiration of this Lease.

64. NO ORAL MODIFICATION

This Lease may not be changed orally or by act or condition but only by agreement in writing and signed by the party against whom enforcement or any waiver, change, modification or discharge is sought.

65. OBLIGATION TO REPAIR UPON DESTRUCTION

Supplementing the provisions of the printed portion of this Lease, Landlord shall not be obligated to commence any repairs or restorations to the demised premises as required hereunder unless and until Landlord has received the proceeds of all fire insurance policies affecting the Building.

- 10 -

Landlord's initials _____

Tenant's initials _____

66.  WATER CHARGES

Supplementing Article 28, should Tenant install an air conditioning unit, refrigerating unit or any other type of appliance or equipment which requires the use of water (hereinafter "Water Consuming Unit"), in addition to Tenant's percentage of water meter charges, Tenant shall pay an additional water charge that is equal to the difference of the water bill prior to the installation of the Water Consuming Unit and the water bill after the installation of the Water Consuming Unit. Such additional water charge shall be deemed additional rent, and failure to pay same shall afford the Landlord the same rights and remedies as if Tenant failed to pay the fixed rent herein.

In addition, should any of the water lines servicing the Premises be broken or any sink or toilet be in a state of disrepair, causing flooding, leakage or excessive usage of water, (hereinafter collectively referred to as the "Leakage"), then Tenant shall pay an additional water charge that is equal to the difference of the water bill prior to the Leakage and the water bill after the Leakage.  Such additional water charge shall be deemed additional rent, and failure to pay same shall afford Landlord the same rights and remedies as if Tenant failed to pay the fixed rent herein.

67.  BINDING EFFECT

This Lease shall not be binding upon Landlord until (a) it shall have been executed and delivered by Landlord to Tenant, (b) Landlord shall have collected all funds due hereunder as the initial payment.  Submission of this Lease prior to the delivery hereof to Landlord shall not be deemed an offer to Lease.

If any checks deposited hereunder have been returned to Landlord uncollected for any reason, at Landlord's option this Lease shall become null & void and of no further effect notwithstanding both parties have executed this Lease.

68.  SIDEWALK CLEANING

Tenant covenants to keep the sidewalk in front of the Premises and the street 18" from the curb, clean of all debris and dirt, at all times, specifically during the New York City Sanitation Department routing times.  Should a sanitation violation be issued to Landlord for Tenant's failure to keep the sidewalk and street clean, Tenant shall indemnify and hold Landlord harmless from said violation.  Landlord may pay the fine stated in said violation and Tenant shall reimburse Landlord for said payment.  Such reimbursement obligation shall be deemed additional rent and failure to pay same shall afford Landlord with the same rights and remedies as if Tenant failed to pay the fixed rent herein.

69.  LANDLORD'S RECEIPT OF FUNDS

A.  If Tenant is in arrears in the payment of fixed rent or additional rent, Tenant waives its right, if any, to designate the items in arrears against which any payments made by Tenant are to be credited and Landlord may apply any of such payments to any

- 11 -

Landlord's initials _____

Tenant's initials _____

such items in arrears as Landlord, in its sole discretion, shall determine irrespective of any designation or request by Tenant as to the items against which any such payments shall be credited.

   B.   No payment by Tenant nor receipt by Landlord of a lesser amount than may be required to be paid hereunder shall be deemed to be other than on account of any such payment, nor shall any endorsement or statement on any check or any letter accompanying any check tendered as payment be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such payment due or pursue any other remedy in this Lease provided.

   C.   No receipt of monies by Landlord from Tenant, after any reentry or after the cancellation or termination of this Lease in any lawful manner, shall reinstate the Lease; and after the service notice to terminate this Lease, or after the commencement of any action, proceeding or other remedy, Landlord may demand, receive and collect any monies due, and apply them on account of Tenant's obligations under this Lease but without in any respect affecting such notice, action, proceeding or remedy.

70.   ENVIRONMENTAL LAWS

   The parties acknowledge that there are certain Federal, State and local laws, regulations and guidelines now in effect, and that additional laws, regulations and guidelines may hereinafter be enacted, relating to or affecting the demised premises, and the larger parcel of land of which the demised premises may be part, concerning the impact on the environment of construction, land use, the maintenance and operation of structures and conduct of business.  Tenant may not cause, or permit to be caused by any act or practice, by negligence, omission, or otherwise that would adversely affect the environment or do anything or permit anything to be done that would violate any of said laws, regulations or guidelines.  Any violations of this covenant shall be an event of default.  Tenant shall have no claim against Landlord by reason of any changes Landlord may make in the demised premises pursuant of said laws, regulations and guidelines.

71.   OBLIGATION TO MAINTAIN HEAT

   Tenant covenants to maintain the heat in the Premises during the heating season (including but not limited to the times that Tenant is closed for business), at a level to prevent any interior water pipes or sprinkler pipes from breaking and/or leaking as a result of freezing.  Should any pipes break as a result of insufficient heat in the Premises, Tenant shall be obligated to repair said breakage.

   If Tenant does not make the repair, Landlord may, but is not obligated to make such repair and charge Tenant for the cost thereof, as additional rent.

   In addition, Tenant shall be liable for any and all damage caused by such pipe breakage, including damage to any of Landlord's property or any of the property belonging to Landlord's lessees, licensees or agents.

- 12 -

Landlord's initials _____

Tenant's initials _____

## 72. REPAIRS

Tenant shall keep and maintain, in good working order, and repair (which repair shall include all necessary replacements, capital expenditures and compliances with all laws now or hereafter adopted) the Premises (including but not limited to the bathroom) and every part thereof, and any and all appurtenances thereto wherever located, including but without limitation interior plumbing lines, plumbing fixtures, sewer lines, storefronts, security gates, electric installations, light fixtures, flooring, ceilings, walls, heating units, air conditioning units, signs, alterations to the Premises whether installed by Landlord or Tenant, improvements to the Premises whether installed by Landlord or Tenant and all other fixtures located within or servicing the Premises, repairs, improvements, renewals and restorations, ordinary and extraordinary, foreseen and unforeseen and  Landlord shall not be obligated to maintain same.

Tenant shall also be responsible and liable to procure any and all permits and/or licenses required or pay any fees levied by any governmental authority for the use and/or operation of any of the foregoing fixtures, including but not limited to, the equipment use permit issued by the New York City Fire Department for the air conditioning unit.

## 73. ADDITIONAL RENT

It is mutually covenanted that if the Landlord shall reasonably pay or be compelled to pay any sum of money or shall reasonably perform any act or be compelled to perform act, which act shall require the payment of any sum of money, by reason of the failure of the Tenant to perform any one or more of the covenants herein contained, the sum or sums so paid by Landlord, together with all interest, costs and expenses incurred in connection therewith, shall, after ten (10) days written notice and demand, be added to the rent installment next due together with interest, at the rate of twelve (12%) per cent per annum and shall be collectable in the same manner and with the same remedies as if originally reserved as additional rent hereunder.

## 74. VAPOR, SMOKE & ODORS

Tenant warrants that it will conduct its business on the Premises without any odors, steam, water vapor or smoke emanating from the Premises, and that Tenant's operation will not be offensive to other occupants of the building jointly occupied with Tenant.  Tenant shall at all times keep the Premises properly ventilated and free from vermin.  Tenant shall not use the plumbing facilities for any purpose other than that for which they were constructed, nor shall Tenant dispose of any waste, garbage, grease or other foreign substances therein.

## 75. TENANT'S ESTOPPEL CERTIFICATE

After delivery of possession of the Premises to Tenant, and thereafter from time to time within five (5) days following each request by Landlord, Tenant agrees to certify by duly executed record able instrument, in form reasonably acceptable to Landlord, to any mortgagee, proposed mortgagee or purchaser or to any other party designated by Landlord (a) that there has been no amendment

- 13 -

Landlord's initials

Tenant's initials

or modification of any of the terms or provisions of this Lease, and that this Lease is presently in full force and effect (or if amended or modified that same is in full force and effect as modified and stating the modification); and (b) that there exists no uncured default on the part of Landlord or Tenant under this Lease, and that Tenant has no right of offset or defense to its liability for the payment of rent there under, or if any such default, offset or defense exists, specifying same; and (c) that Tenant is in actual physical possession of the space so demised to Tenant and is paying rent to Landlord in accordance with the terms of this Lease. Should Tenant fail to execute such agreement, same shall constitute a material breach of this Lease and Landlord may terminate same. In addition, if Tenant fails to provide said agreement within five (5) days from the time Landlord requests same, in addition to any other remedies Landlord may have, Landlord may execute said agreement on behalf of Tenant and in Tenant's name and Tenant hereby appoints Landlord attorney in-fact to execute said agreement on Tenant's behalf in accordance with the foregoing.

76.  PROVISIONS SEVERABLE

     If any term or provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

77.  INTERPRETATION

     The covenants and agreements herein contained shall bind, and the benefit and advantages hereof shall inure to, the respective heirs, legal representatives, successors and assigns of Landlord and Tenant. Whenever used, the singular number shall include the plural, the plural shall include the singular, and the use of any of any gender shall include all genders. The headings set forth in this Lease are for ease of reference only, and shall not be interpreted to modify or limit the provisions hereof. This Lease shall be given a fair and reasonable construction in accordance with intentions of the parties hereto, and without regard to or aid of cannons requiring construction against Landlord, Tenant or the party whose counsel drafted this Lease. In the event that there are any ambiguous terms in this Lease, such terms shall not be construed against either party.

78.  SECURITY

     At the execution hereof, Tenant has posted the security deposit in the amount of $63,000 pursuant to Article 31 of the Lease (hereinafter "the Security").

79.  USE OF THE PREMISES

     Supplementing Article 2, Tenant shall use the Premises for the retail sale of costume jewelry, silver jewelry, ties, wigs, belt buckles, scarves, sunglasses, t-shirts, umbrellas, gloves, hats, watches, perfumes and handbags and for no other purpose. Tenant shall not sell any counterfeit merchandise of any kind. In

- 14 -

Landlord's initials _____

Tenant's initials _____

the event the sale or possession of counterfeit merchandise is conducted, maintained, permitted, facilitated, promoted or carried on, the Premises shall immediately be closed and the Tenant shall immediately surrender the entire Premises to the Landlord and deliver same vacant, in broom clean condition, free of al occupants. In the event the New York City Police Department either padlocks or obtains possession of the Premises as a result of a violation of the provisions of this paragraph, then the provisions of this paragraph shall be self-operative, it shall be deemed as if Tenant surrendered the Premises to Landlord and Landlord may obtain possession of the Premises from the New York City Police Department. Further, Tenant hereby consents to warrantless searches by the New York City Police Department.

Landlord makes absolutely no representations whether the Premises may legally be used for the foregoing use. In the event the Building Department or some other governmental authority physically shuts down the Premises based upon a violation of the certificate of occupancy, Tenant may cancel the Lease on 5 business days notice to Landlord. Notwithstanding the foregoing, if a violation is placed for a violation of the certificate of occupancy, this is not an event which triggers Tenant's right to cancel the Lease.

In the event Tenant breaches this use clause and Landlord is fined as a result of the sale of counterfeit goods from the Premises, in addition to all other remedies available to Landlord, Tenant shall pay the amount of the fine and legal fees incurred by Landlord with regard to same, all of which shall be deemed Additional Rent pursuant to this Lease. Further, in the event Tenant breaches this paragraph and is evicted and/or shut down by the New York City Police Department for the sale of counterfeit goods, Tenant hereby forfeits any right it may have to the return of its security deposit.

80. NET LEASE

Landlord represents that it is the net lessee in possession of the building in which the Premises is located pursuant to a net lease with AJJ Canal LLC.

277 Associates, LLC

By: _____
    Albert Laboz, member

PSK America, Inc.

By: _____
    Jae Mon Yoo
    Title: President

Consented to by AJJ Canal, LLC:

By: _____
    Albert Laboz, member

- 15 -



Exhibit 1

CANAL ST.

BROADWAY

Exhibit 2