## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x

CHLOÉ, S.A.S., J. CHOO LIMITED,

                  Plaintiffs,

        - against -

KEN CHEN a/k/a SHU CHEN a/k/a XIANG
CHEN, DANIEL DOE, GODDESS
TRADING d/b/a
GODDESSTRADING@HOTMAIL.COM,
LUXUNG GOODS, LUXURY GOODS,
TERRY DOE d/b/a
AZNTERRY911@HOTMAIL.COM, JASON
DOE d/b/a JARRY326@YAHOO.COM.CN,
FASHION HANDBAGS, BENNY DOE,
JEANCARLO DOE, JOSEPH a/k/a JOSE
DOE, SISI a/k/a CECI DOE, TOP LUXURY
HANDBAGS d/b/a
LUXURYHANDBAGS277@YAHOO.COM,
FRANCISCO DOE, BEN DOE, CARLOS
DOE, INSTYLE LUXURY HANDBAGS,
CORINA DOE a/k/a QIMIAO HU a/k/a QI
MIAO HU, KENNY DOE a/k/a YE GUO
a/k/a GUO Q YE, NEWCOME TRADING
d/b/a TOSCA, QUICK GLOBAL SHIPPING,
HOWARD EXPRESS SHIPPING, RANDY
DOE, and various JOHN and JANE DOES 1-
10 and XYZ COMPANIES
(UNIDENTIFIED),

                  Defendants.

--------------------------------------------------x

Civil Action No.: 07 CV 6491 (WCP)

[FILED UNDER SEAL
PURSUANT TO 15 U.S.C. § 1116]

MEMORANDUM OF LAW IN REPLY TO
DEFENDANT HOWARD EXPRESS
SHIPPING'S OPPOSITION TO THE
TEMPORARY RESTRAINING ORDER,
SEIZURE ORDER, ORDER TO SHOW
CAUSE FOR A PRELIMINARY
INJUNCTION, EXPEDITED DISCOVERY
ORDER, ORDER RESTRAINING ASSETS
AND ORDER SEALING FILE.

        CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively,

"Plaintiffs") hereby submit this Memorandum of Law in Reply to Defendant Howard Express

Shipping's ("Howard Express") Opposition to Plaintiffs' *ex parte* Application for a Temporary

Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited

Discovery Order, Order Restraining Assets and Order Sealing File as it applies to Howard

Express based on Plaintiffs' action for trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, and trademark dilution arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and for trademark infringement, unfair competition, trademark dilution and unlawful deceptive acts and practices under the laws of the State of New York.

## PRELIMINARY STATEMENT

Plaintiffs are world-famous designers and producers of high-quality handbags, apparel and other luxury goods ("Plaintiffs' Products"). Plaintiffs' celebrated products are identified by one or more of Plaintiffs' several federally registered marks ("Plaintiffs' Marks"). Howard Express, without Plaintiffs' consent or authorization, is importing, distributing, and selling counterfeit handbags bearing Plaintiffs' Marks and designed to look exactly like genuine Plaintiffs' Products, or the means for making the same (the "Counterfeit Products"). Howard Express, with other defendants named in this action, are part of a common operation which controls various shops, booths and businesses, primarily in lower Manhattan (Chinatown) that sell Counterfeit Products to the tourists and residents alike. Howard Express is primarily responsible for providing shipping services for the sale of Counterfeit Products.

Defendants are knowingly trafficking in counterfeits of Plaintiffs' handbags in reckless disregard for trademark law and the rights of Plaintiffs. Howard Express is a shipping company against which judgments and permanent injunctions have been entered in at least one other case involving counterfeiting trademarks of luxury goods. Howard Express' rampant counterfeiting will continue to cause irreparable harm to Plaintiffs and to Plaintiffs' valuable and famous trademarks, their outstanding reputation and goodwill, and their rightful market position if the requested injunctive relief is not granted.

Plaintiffs sought, and received, a Temporary Restraining Order from the Court ("TRO") allowing Plaintiffs to seize all unauthorized and unlicensed merchandise bearing Plaintiffs' Marks, as well as the means for making the same, and books and records relating thereto and restrain Howard Express' assets. Plaintiffs respectfully request that the Court enter a preliminary injunction against Howard Express in the form contained in the TRO.

## FACTUAL BACKGROUND

### I.    Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks and trade names, including Plaintiffs' Marks, throughout the United States and elsewhere in the World. Plaintiffs own the entire right, title and interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[1]

### II.    Howard Express' Conduct

Plaintiffs, through their counsel and investigators, have thoroughly investigated this group of Defendants in this Action and have confirmed that Howard Express is knowingly distributing, marketing, offering for sale and selling Counterfeit Products through the shipping services offered by Howard Express.[2]  Howard Express ships these counterfeit handbags openly and provides ample services for known counterfeiters, including other defendants named in this action, to distribute Counterfeit Products to customers. Plaintiffs have not in any way authorized or consented to Howard Express' sale or distribution of Counterfeit Products.[3]

---

[1] *See* Declaration of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Declaration of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Support of Plaintiffs' Application for a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO Application"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Application and Complaint, filed July 17, 2007, in this matter are incorporated herein by reference.
[2] *See generally* Declaration of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl."), filed in support of TRO Application.
[3] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.

Howard Express is clearly aware of genuine Plaintiffs' Products and the counterfeit nature of the handbags they are providing storage and shipping services for. Indeed, Howard Express is a counterfeiting recidivist, as it was a named defendant in a prior lawsuit for counterfeiting high-end watches and was permanently enjoined from counterfeiting of those marks and brands despite purportedly being merely a "shipper."[4] Jerry Tran, a principal of Howard Express, is plainly aware of counterfeiting activities being conducted via shipping service providers and his own connection to the same as a recidivist.[5]

Plaintiffs first discovered Howard Express when Plaintiffs' investigator purchased a counterfeit bag from Ken Chen a/k/a Shu Chen a/k/a Xiang Chen, a defendant in this matter, and the package arrived from Shu Chen at Howard Express Shipping.[6] Plaintiffs' investigator then traced the shipment of Counterfeit Products purchased from other Defendants in this action to Howard Express.[7]

On July 25, 2007, Plaintiffs executed the TRO at Howard Express' place of business at 33 Howard Street, New York, NY 10013 ("Howard Express Premises") and served Howard Express, as identified in the TRO. Plaintiffs' representatives seized 12 Counterfeit Products from the Howard Express Premises, as well as documents evidencing their involvement in the manufacture, sale and distribution of Counterfeit Products.[8] Documents seized demonstrate the Howard Express' business connections to other members of the Chinatown counterfeiting ring,

---

[4] See Declaration of Harley Lewin ("Lewin Decl."), filed in support of TRO Application, dated July 17, 2007, Exs. A-B (Perm. Inj. And Final J. On Consent As To Defs. Q's Global Inc., et al., entered Sept. 14, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002); Perm. Inj. And Final J. On Consent As To Defs. Howard Shipping And Trading, et al., entered Jul. 12, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002).
[5] See generally Declaration of Jerry Tran in Opposition to Plaintiff's Motion for Preliminary Injunction ("Tran Decl."), dated August 1, 2007, at ¶ 7.
[6] See McCarthy Decl. at ¶ 15.
[7] Id.
[8] Declaration of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the TRO, at ¶ 37.

including several Defendants in this action, such as Yu Lin a/k/a Benny Doe.[9]  These documents include mailbox service agreements, customer and account lists and shipping receipts identifying known counterfeiters, and Defendants in this action, including for the shipment of "fashion handbags" for individuals and entities at 265 Canal Street, where many other defendants named in this action do business.[10]  Pursuant to the TRO, Plaintiffs' representatives also restrained approximately $800 in assets held in the name of Howard Express.[11]  The documents and Counterfeit Products seized by Plaintiffs' representatives evidence Howard Express' involvement with and connection to known counterfeiters and other defendants in this action.[12]

## ARGUMENT

I.    **Howard Express' Failed to Comply with S.D.N.Y. Local Rule 7.1 by Not Submitting a Memorandum of Law.**

Howard Express failed to file and serve a memorandum of law as required by Local Rule 7.1 with their opposition.  *See* S.D.N.Y. Local Civ. R. 7.1  For this reason alone, the Court should strike Howard Express' opposition.  "Failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion.  It is not necessary to reach the merits."  *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, No. 98 Civ. 5045, 2000 WL 96944, *3 (S.D.N.Y. July 11, 2000).  Although Howard Express did submit an in opposition to Plaintiffs' request for a preliminary injunction, "[s]ubmitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1." *Wenzhou Wanli Food Co.*, 2000 WL 964944 at *3;  *see also Microsoft Corp. v. K & E Computer Inc.*, No. 00 Civ. 7550(RLC), 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) (where "defendants only filed an affirmation in opposition to [plaintiff's] motion to dismiss, and they did not cite to any legal authority," the

---

[9] *See* Declaration of Heidi Garfield in Support of Plaintiffs' Reply to Howard Defendants' Opposition ("Garfield Decl."), dated August 2, 2007, at ¶¶ 2-5, Exs. A-D.
[10] *Id.*
[11] *See* Bookbinder Decl. at ¶¶ 38-40.
[12] *See* Garfield Decl. at ¶¶ 2-5, Exs. A-D.

requirements of Rule 7.1 were not met).

Howard Express' failure to comply with the Court's local rules by failing to submit a memorandum of law is fundamentally unfair and prejudicial to Plaintiffs and the Court should disregard Howard Express' opposition.

## II.    Plaintiffs Are Entitled To A Preliminary Injunction Against Howard Express

Section 34 of the Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. 1116(a).  The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995).  This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979).  As explained in full in Plaintiffs' Memorandum filed in support of the TRO, all Defendants in this action are causing Plaintiffs irreparable harm by their counterfeiting, and Plaintiffs are likely to succeed on their claims. Plaintiffs meet the preliminary injunction criteria with respect to Howard Express.[13]

---

[13] As the Howard Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).

## A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST HOWARD EXPRESS

To prevail on their trademark infringement claim, Plaintiffs must demonstrate that they own Plaintiffs' Marks and that a likelihood of confusion will result from Howard Express' conduct. *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486, 489090 (2d Cir. 1988). Howard Express does not dispute Plaintiffs' ownership of Plaintiffs' Marks, instead arguing only that they did not take part in the counterfeiting business discovered by Plaintiffs at the Howard Express Premises. This is the ultimate issue in this case, because "counterfeit marks are inherently confusing." *Philip Morris US Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004). As recognized by this Court's grant of the TRO, Plaintiffs have established at least a likelihood that Howard Express is engaging in unauthorized, confusing use of Plaintiffs' Marks. Plaintiffs' TRO Application sets forth clear evidence identifying Howard Express as primary and well-known shippers of Counterfeit Products and evidence seized pursuant to the TRO demonstrates that Howard Express is indeed shipping Counterfeit Products. Despite the Howard Express' protestations of innocence, Plaintiffs are likely to succeed in proving that Howard Express is liable for trademark infringement, thus a preliminary injunction should be entered against it

## B. ALTERNATIVELY, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST HOWARD EXPRESS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond

those who actually misrepresent goods or directly place such goods in commerce"). Since a seller bears strict liability for violations of the Lanham Act, even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark infringement -- intent is not required. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). This Court has recognized "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party." *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982). A contributor who knew or had reason to know of the Lanham Act violations or was "willfully blind" to the violations is liable for trademark infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996). To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004). Even if Howard Express are not directly involved in the sale of the Counterfeit Products, they remain liable for contributory trademark infringement because they chose to be willfully blind to the counterfeiting business operated by their subtenants from the Howard Express Premises.

This Court has granted plaintiffs a preliminary injunction against trademark counterfeiters on facts almost identical to those here. In *Cartier Int'l B.V. v. Liu*, this Court awarded plaintiffs a preliminary injunction against a business that was acknowledged to have "knowingly handled the shipment of defendants' counterfeit merchandise to customers." *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *2 (S.D.N.Y. Apr. 17, 2003). As occurred in the instant action, the *Cartier* plaintiffs' investigators seized counterfeit goods in sealed packages found on the shippers premises. *Id.* Indeed, Howard Express here were willfully blind to conduct occurring on the Howard Express Premises, as Howard Express, a recidivist previously named alongside its owner in a counterfeiting action, continued to ship

goods on behalf of known counterfeiters and identified such goods on shipping receipts as "Fashion Handbags."[14] Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against Howard Express and are entitled to a preliminary injunction.

## II.     PLAINTIFFS ARE ENTITLED TO CONTINUE ASSET RESTRAINT AS TO HOWARD EXPRESS

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs are entitled to an equitable accounting of Howard Express' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark."). To succeed on a request for an asset restraint, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if assets were not frozen. *Reebok,* 737 F. Supp. at 1524, 1527.

In the *Cartier* case described above, on facts nearly identical to those here, this Court included in its preliminary injunction a provision continuing the asset restraint that had been part of the temporary restraining order issued in that case. *Cartier Int'l*, 2003 WL 1900852, at *3.

---

[14] *See* Garfield Decl., ¶ 3, Ex. B.

As demonstrated above, and recognized by this Court in its grant of the TRO, Plaintiffs will likely succeed on the merits of their claims and are incurring irreparable injury. Further, the recidivism of Howard Express tends to favor the conclusion that it would likely hide assets, thereby rendering an accounting meaningless. Accordingly, the grant of an injunction restraining the transfer of Howard Express' assets is proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to grant Plaintiffs' request for a preliminary injunction against Howard Express in the form contained in the TRO.

Dated: New York, New York
      August ̲2̲, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By: _____
Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
James Donoian (JD 9052)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
MetLife Building
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Katherine Compton
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3660
Facsimile: (214) 665-5960
*Pro Hac Vice Pending*

*Attorneys for Plaintiffs*
*Chloé, S.A.S., J. Choo Limited*