# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
                :

CHLOÉ, S.A.S., J. CHOO LIMITED,     :    Civil Action No.: 07 CV 6491 (WCP)

          Plaintiffs,      :

      - against -        :   **[FILED UNDER SEAL
                PURSUANT TO 15 U.S.C. § 1116]**

KEN CHEN a/k/a SHU CHEN a/k/a XIANG
CHEN, DANIEL DOE, GODDESS
TRADING d/b/a            **MEMORANDUM OF LAW IN REPLY TO
GODDESSTRADING@HOTMAIL.COM,  **DEFENDANTS' QUICK GLOBAL SHIPPING,
LUXUNG GOODS, LUXURY GOODS,    **LISA WU d/b/a QUICK GLOBAL SHIPPING
TERRY DOE d/b/a            **AND SONG GAO d/b/a QUICK GLOBAL
AZNTERRY911@HOTMAIL.COM, JASON  **SHIPPING's OPPOSITION TO THE
DOE d/b/a JARRY326@YAHOO.COM.CN,  **TEMPORARY RESTRAINING ORDER,
FASHION HANDBAGS, BENNY DOE,    **SEIZURE ORDER, ORDER TO SHOW
JEANCARLO DOE, JOSEPH a/k/a JOSE   **CAUSE FOR A PRELIMINARY
DOE, SISI a/k/a CECI DOE, TOP LUXURY **INJUNCTION, EXPEDITED DISCOVERY
HANDBAGS d/b/a             **ORDER, ORDER RESTRAINING ASSETS
LUXURYHANDBAGS277@YAHOO.COM,   **AND ORDER SEALING FILE.**
FRANCISCO DOE, BEN DOE, CARLOS
DOE, INSTYLE LUXURY HANDBAGS,
CORINA DOE a/k/a QIMIAO HU a/k/a QI
MIAO HU, KENNY DOE a/k/a YE GUO
a/k/a GUO Q YE, NEWCOME TRADING
d/b/a TOSCA, QUICK GLOBAL SHIPPING,
HOWARD EXPRESS SHIPPING, RANDY
DOE, and various JOHN and JANE DOES 1-
10 and XYZ COMPANIES
(UNIDENTIFIED),

         Defendants.

-------------------------------------------------- X

       CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively,

"Plaintiffs") hereby submit this Memorandum of Law in Reply to Defendants Quick Global

Shipping ("Quick Global"), Lisa Wu ("Wu") d/b/a Quick Global Shipping and Song Gao

("Gao") d/b/a Quick Global Shipping (collectively, "Quick Defendants") Opposition to

Plaintiffs' *ex parte* Application for a Temporary Restraining Order, Seizure Order, Order to

Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File as it applies to the Quick Defendants based on Plaintiffs' action for trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, and trademark dilution arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and for trademark infringement, unfair competition, trademark dilution and unlawful deceptive acts and practices under the laws of the State of New York.

## PRELIMINARY STATEMENT

Plaintiffs are world-famous designers and producers of high-quality handbags, apparel and other luxury goods ("Plaintiffs' Products"). Plaintiffs' celebrated products are identified by one or more of Plaintiffs' several federally registered marks ("Plaintiffs' Marks"). The Quick Defendants, without Plaintiffs' consent or authorization, are importing, distributing, and selling counterfeit handbags bearing Plaintiffs' Marks and designed to look exactly like genuine Plaintiffs' Products, or the means for making the same (the "Counterfeit Products"). Upon information and belief, the Quick Defendants, with other Defendants named in this action, are part of a common operation which controls various shops, booths and businesses, primarily in lower Manhattan (Chinatown) that sell Counterfeit Products to the tourists and residents alike. The Quick Defendants are primarily responsible for providing shipping services for the sale of Counterfeit Products as well as storage for the same, as the Quick Defendants provide known counterfeiters with storage rooms at the Quick Defendants' premises.

Defendants are knowingly trafficking in counterfeits of Plaintiffs' handbags in reckless disregard for trademark law and the rights of Plaintiffs. The Quick Defendants make up a shipping company against which judgments and permanent injunctions have been entered in at

least one other case involving counterfeiting trademarks of luxury goods. The Quick Defendants' rampant counterfeiting is causing, and will continue to cause, irreparable harm to Plaintiffs and to Plaintiffs' valuable and famous trademarks, their outstanding reputation and goodwill, and their rightful market position.

Plaintiffs sought, and received, a Temporary Restraining Order from the Court ("TRO") allowing Plaintiffs to seize all unauthorized and unlicensed merchandise bearing Plaintiffs' Marks, as well as the means for making the same, and books and records relating thereto and restrain the Quick Defendants' assets. Plaintiffs respectfully request that the Court enter a preliminary injunction against the Quick Defendants in the form contained in the TRO.

## FACTUAL BACKGROUND

### I.    Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks and trade names, including Plaintiffs' Marks, throughout the United States and elsewhere in the World. Plaintiffs own the entire right, title and interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[1]

### II.    The Quick Defendants' Conduct

Plaintiffs, through their counsel and investigators, have thoroughly investigated this group of Defendants in this Action and have confirmed that the Quick Defendants are knowingly distributing, marketing, offering for sale and selling Counterfeit Products through the shipping and storage services offered by Quick Global.[2] The Quick Defendants ship these counterfeit

---

[1] *See* Declaration of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Declaration of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Support of Plaintiffs' Application for a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO Application"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Application and Complaint, filed July 17, 2007, in this matter are incorporated herein by reference.
[2] *See generally* Declaration of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl."), filed in support of TRO Application.

handbags openly and provide ample facilities for known counterfeiters, including other defendants named in this action, to store Counterfeit Products and distribute them to customers. Plaintiffs have not in any way authorized or consented to the Quick Defendants' sale or distribution of Counterfeit Products.[3]

The Quick Defendants are clearly aware of genuine Plaintiffs' Products and the counterfeit nature of the handbags they are providing storage and shipping services for. Indeed, the Quick Defendants are counterfeiting recidivists, as they were named defendants (or share an address and similar business with named defendants) in a prior lawsuit for counterfeiting high-end watches and were permanently enjoined from counterfeiting of those marks and brands.[4]

Plaintiffs first discovered the Quick Defendants when a seller of counterfeit handbags displayed counterfeit handbags for sale and informed Plaintiffs' investigators that such bags could be shipped by the Quick Defendants and that the Quick Defendants regularly facilitate the shipment of Counterfeit Products.[5] Plaintiffs also traced the shipment of Counterfeit Products purchased from other Defendants in this action to the Quick Defendants.[6]

On July 25, 2007, Plaintiffs executed the TRO at the Quick Defendants' place of business at 25 Howard Street, New York, NY 10013 ("Quick Defendants' Premises"). While there, Plaintiffs' representatives discovered ten storage rooms containing Counterfeit Products.[7] Defendant Gao, a proprietor of Quick Global, provided Plaintiffs' representatives access to these locked storage facilities.[8] Plaintiffs' representatives seized more than 165 Counterfeit Products

---

[3] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.
[4] *See*, Declaration of Harley Lewin ("Lewin Decl."), filed in support of TRO Application, dated July 17, 2007, Exs. A-B (Perm. Inj. And Final J. On Consent As To Defs. Q's Global Inc., et al., entered Sept. 14, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002); Perm. Inj. And Final J. On Consent As To Defs. Howard Shipping And Trading, et al., entered Jul. 12, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002).
[5] McCarthy Decl. at ¶ 81-82.
[6] *Id.* at 83.
[7] Declaration of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the Order at ¶ 41.
[8] *Id.*

from the Quick Defendants' Premises, as well as documents evidencing their involvement in the manufacture, sale and distribution of Counterfeit Products.[9]  Pursuant to the TRO, Plaintiffs' representatives also restrained $322,247 in assets in the name of Defendant Wu, a proprietor of Quick Global.[10]  The documents and Counterfeit Products seized by Plaintiffs' representatives evidence the Quick Defendants' involvement with and connection and lease of storage facilities to known counterfeiters and other defendants in this action, including Defendant Newcome Trading Inc. d/b/a Tosca, a manufacturer and distributor of Counterfeit Products.[11]  Indeed, the seizure of more than 165 Counterfeit Products *from the Quick Defendants' Premises* inextricably links the Quick Defendants to counterfeiting activity.

## ARGUMENT

I.    **Quick Defendants Failed to Comply with S.D.N.Y. Local Rule 7.1 by Not Submitting a Memorandum of Law.**

The Quick Defendants failed to file and serve a memorandum of law as required by Local Rule 7.1 with their opposition.  *See* S.D.N.Y. Local Civ. R. 7.1  For this reason alone, the Court should strike Quick Defendants' opposition.  "Failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion.  It is not necessary to reach the merits."  *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, No. 98 Civ. 5045, 2000 WL 96944, *3 (S.D.N.Y. July 11, 2000).  Although the Quick Defendants did submit an affirmation from their counsel in opposition to Plaintiffs' request for a preliminary injunction, "[s]ubmitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1." *Wenzhou Wanli Food Co.*, 2000 WL 964944 at *3; *see also Microsoft Corp. v. K & E Computer Inc.,* No. 00 Civ. 7550(RLC), 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) (where "defendants only

---

[9] *Id.*

[10] *Id.* at ¶ 42.

[11] *See* Declaration of Heidi Garfield in Support of Plaintiffs' Reply to Quick Defendants' Opposition ("Garfield Decl."), dated August 2, 2007, at ¶¶ 2-4, Exs. A-C.

filed an affirmation in opposition to [plaintiff's] motion to dismiss, and they did not cite to any legal authority," the requirements of Rule 7.1 were not met). Moreover, legal arguments are not appropriate in an attorney's affirmation, but instead, should only be presented in a properly filed memorandum of law. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (striking legal arguments from an attorney's affidavit filed in support of a motion).

Quick Defendants' failure to comply with the Court's local rules by failing to submit a memorandum of law is fundamentally unfair and prejudicial to Plaintiffs and the Court should disregard Quick Defendants' opposition.

## II.    Plaintiffs Are Entitled To A Preliminary Injunction Against The Quick Defendants

Section 34 of the Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. 1116(a). The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995). This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979). As explained in full in Plaintiffs' Memorandum filed in support of the TRO, all Defendants in this action are causing Plaintiffs

irreparable harm by their counterfeiting, and Plaintiffs are likely to succeed on their claims. Plaintiffs meet the preliminary injunction criteria with respect to the Quick Defendants.[12]

## A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST THE QUICK DEFENDANTS

To prevail on their trademark infringement claim, Plaintiffs must demonstrate that they own Plaintiffs' Marks and that a likelihood of confusion will result from Quick Defendants' conduct. *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270; *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486, 489090 (2d Cir. 1988). The Quick Defendants do not dispute Plaintiffs' ownership of Plaintiffs' Marks. They argue only that they did not take part in the counterfeiting business discovered by Plaintiffs at the Quick Defendants' Premises. This is the ultimate issue in this case, because "counterfeit marks are inherently confusing." *Philip Morris US Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004). As recognized by this Court's grant of the TRO, Plaintiffs have established at least a likelihood that the Quick Defendants are engaging in unauthorized, confusing use of Plaintiffs' Marks. Plaintiffs' TRO Application sets forth clear evidence identifying the Quick Defendants as primary and well-known shippers of Counterfeit Products and evidence seized pursuant to the TRO demonstrates that the Quick Defendants are not only shipping Counterfeit Products but also operating a warehouse of Counterfeit Products at the Quick Defendants' Premises. Despite the Quick Defendants' protestations of innocence, Plaintiffs are likely to succeed in proving that Quick Defendants are liable for trademark infringement, thus a preliminary injunction should be entered against them.

---

[12] As the Quick Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).

### B.  ALTERNATIVELY, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST THE QUICK DEFENDANTS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce").  Since a seller bears strict liability for violations of the Lanham Act, even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark infringement -- intent is not required.  *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000).  This Court has recognized "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party."  *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982).  A contributor who knew or had reason to know of the Lanham Act violations or was "willfully blind" to the violations is liable for trademark infringement.  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996).  To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate.  *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004).  Even if the Quick Defendants are not directly involved in the sale of the Counterfeit Products, they remain liable for contributory trademark infringement because they chose to be willfully blind to the counterfeiting business operated by their subtenants from the Quick Defendants' Premises.

This Court has granted plaintiffs a preliminary injunction against trademark counterfeiters on facts almost identical to those here.  In *Cartier Int'l B.V. v. Liu*, this Court awarded plaintiffs a preliminary injunction against a business that was acknowledged to have

"knowingly handled the shipment of defendants' counterfeit merchandise to customers." *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *2 (S.D.N.Y. Apr. 17, 2003). As occurred in the instant action, the *Cartier* plaintiffs' investigators seized counterfeit goods in sealed packages found on the shippers premises. *Id.* Indeed, the Quick Defendants here were willfully blind to conduct occurring on the Quick Defendants' Premises, as Quick Defendants always maintained access to the subleased storage units and, further, provided Plaintiffs' representatives with access to them.[13] Landlords, such as the Quick Defendants, have been found contributorily liable for the acts of trademark infringement committed directly by their tenants. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against the Quick Defendants and are entitled to a preliminary injunction.

## II.    PLAINTIFFS ARE ENTITLED TO CONTINUE ASSET RESTRAINT AS TO THE QUICK DEFENDANTS

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs are entitled to an equitable accounting of the Quick Defendants' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court

---

[13] Garfield Decl. ¶¶ 2-4; Bookbinder Decl. ¶ 41.

holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark."). To succeed on a request for an asset restraint, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if assets were not frozen. *Reebok*, 737 F. Supp. at 1524, 1527.

In the *Cartier* case described above, on facts nearly identical to here, this Court included in its preliminary injunction a provision continuing the asset restraint that had been part of the temporary restraining order issued in that case. *Cartier Int'l*, 2003 WL 1900852, at *3. Despite an entitlement to a full asset restraint, Plaintiffs have cooperated with the Quick Defendants in good faith with respect to assets linked to other business ventures, including Defendant Wu's real estate business.[14] Plaintiffs released a substantial amount of money to Defendant Wu and remain considerate, as set forth in the TRO, of additional relief based on need and proof of the origin of the money. As demonstrated above, and recognized by this Court in its grant of the TRO, Plaintiffs will likely succeed on the merits of their claims and are incurring irreparable injury. Further, the recidivism of the Quick Defendants tends to favor the conclusion that they would likely hide assets, thereby rendering an accounting meaningless. Accordingly, the grant of an injunction restraining the transfer of the Quick Defendants' assets is proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to deny the Quick Defendants' requested relief of dischargement, dissolution or modification of the TRO and grant Plaintiffs' request for a preliminary injunction against the Quick Defendants in the form contained in the TRO.

---

[14] Garfield Decl. ¶¶ 5-6.

Dated: New York, New York
August 2, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By: _____
   Harley I. Lewin (HL 1819)
   Scott Gelin (SG 9599)
   James Donoian (JD 9052)
   GREENBERG TRAURIG, LLP
   200 Park Avenue, 34th Floor
   MetLife Building
   New York, New York 10166
   Telephone: (212) 801-9200
   Facsimile: (212) 801-6400

   Katherine Compton
   GREENBERG TRAURIG, LLP
   2200 Ross Avenue
   Suite 5200
   Dallas, Texas 75201
   Telephone: (214) 665-3660
   Facsimile: (214) 665-5960
   *Pro Hac Vice Pending*

   *Attorneys for Plaintiffs*
   *Chloé, S.A.S., J. Choo Limited*