IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| CHLOÉ, S.A.S., J. CHOO LIMITED,<br><br>Plaintiffs,<br><br>- against -<br><br>KEN CHEN a/k/a SHU CHEN a/k/a XIANG CHEN, DANIEL DOE, GODDESS TRADING d/b/a GODDESSTRADING@HOTMAIL.COM, LUXUNG GOODS, LUXURY GOODS, TERRY DOE d/b/a AZNTERRY911@HOTMAIL.COM, JASON DOE d/b/a JARRY326@YAHOO.COM.CN, FASHION HANDBAGS, BENNY DOE, JEANCARLO DOE, JOSEPH a/k/a JOSE DOE, SISI a/k/a CECI DOE, TOP LUXURY HANDBAGS d/b/a LUXURYHANDBAGS277@YAHOO.COM, FRANCISCO DOE, BEN DOE, CARLOS DOE, INSTYLE LUXURY HANDBAGS, CORINA DOE a/k/a QIMIAO HU a/k/a QI MIAO HU, KENNY DOE a/k/a YE GUO a/k/a GUO Q YE, NEWCOME TRADING d/b/a TOSCA, QUICK GLOBAL SHIPPING, HOWARD EXPRESS SHIPPING, RANDY DOE, and various JOHN and JANE DOES 1-10 and XYZ COMPANIES (UNIDENTIFIED),<br><br>Defendants. | Civil Action No.: 07 CV 6491 (WCP)<br><br>[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116]<br><br>MEMORANDUM OF LAW IN REPLY TO DEFENDANTS PSK AMERICA, INC.'S AND JAE MAN YOO'S OPPOSITION TO THE TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION, EXPEDITED DISCOVERY ORDER, ORDER RESTRAINING ASSETS AND ORDER SEALING FILE. |

-----------------------------------------------------------X

CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively, "Plaintiffs") hereby submit this Memorandum of Law in Reply to Defendants PSK America, Inc.'s ("PSK") and Jae Man Yoo's ("Yoo") (collectively, "PSK Defendants") Opposition to Plaintiffs' *ex parte* Application for a Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File as it applies to the PSK Defendants based on Plaintiffs' action for

trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, and trademark dilution arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and for trademark infringement, unfair competition, trademark dilution and unlawful deceptive acts and practices under the laws of the State of New York.

## PRELIMINARY STATEMENT

Plaintiffs are world-famous designers and producers of high-quality handbags, apparel and other luxury goods. Plaintiffs' celebrated products are identified by one or more of Plaintiffs' several federally registered marks ("Plaintiffs' Marks"). The PSK Defendants, without Plaintiffs' consent or authorization, are importing, distributing, and selling counterfeit handbags bearing Plaintiffs' Marks and designed to look exactly like genuine Plaintiffs' goods (the "Counterfeit Products"). Upon information and belief, the PSK Defendants, with other Defendants named in this action, are part of a common operation which controls various shops, booths and businesses, primarily in lower Manhattan (Chinatown) that sell Counterfeit Products to the tourists and residents alike. The PSK Defendants are primarily responsible for providing retail space to known counterfeiters, including defendants in this action, as well as selling and distributing Counterfeit Products at a retail space operated by PSK.

Defendants are knowingly trafficking in counterfeits of Plaintiffs' handbags in reckless disregard for trademark law and the rights of Plaintiffs. The PSK Defendants' rampant counterfeiting is causing, and will continue to cause, irreparable harm to Plaintiffs and to Plaintiffs' valuable and famous trademarks, their outstanding reputation and goodwill, and their rightful market position.

Plaintiffs sought, and received, a Temporary Restraining TRO from the Court ("TRO") allowing Plaintiffs to seize all unauthorized and unlicensed merchandise bearing Plaintiffs' Marks, as well as the means for making the same, and books and records relating thereto and restrain the PSK Defendants' assets.

## FACTUAL BACKGROUND

### I.     Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks and trade names, including Plaintiffs' Marks, throughout the United States and elsewhere in the World ("Plaintiffs' Products"). Plaintiffs own the entire right, title and interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[1]

### II.    The PSK Defendants' Conduct

Plaintiffs, through their counsel and investigators, have thoroughly investigated the group of Defendants named in this Action and served as XYZ Companies and John and Jane Doe Defendants those entities and individuals who Plaintiffs' investigators observed engaging in the manufacture, sale, offer for sale and/or distribution of Counterfeit Products during the execution of the TRO. Plaintiffs' representatives observed the PSK Defendants knowingly distributing, marketing, offering for sale and selling Counterfeit Products through the retail space leased and operated by PSK when Plaintiffs' representatives went to 420 Broadway, New York, NY 10013 ("420 Broadway") to serve named defendants, leading Plaintiffs' representatives to serve Defendant PSK and Defendant Yoo as an XYZ Company and a John Doe Defendant,

---

[1] *See* Declaration of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Declaration of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Support of Plaintiffs' Application for a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO Application"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Application and Complaint, filed July 17, 2007, in this matter are incorporated herein by reference.

respectively.[2] Plaintiffs have not in any way authorized or consented to the PSK Defendants' sale or distribution of Counterfeit Products.[3]

The PSK Defendants are clearly aware of genuine Plaintiffs' Products and the counterfeit nature of the handbags for which they are providing retail and credit card services. PSK Defendants are connected to the vast web of counterfeiting in Chinatown through space PSK leases at 420 Broadway a/k/a 277 Canal Street, New York, NY 10013 ("277 Canal), part of which is sub-leased to Yu Lin a/k/a Benny Doe ("Lin"), a named defendant in this action.[4] Plaintiffs first discovered the sale of Counterfeit Products at 420 Broadway when Plaintiffs' investigator went to 277 Canal and a seller there informed Plaintiffs' investigator about Counterfeit Products available through a "Benny" a/k/a Lin at 420 Broadway (277 Canal and 420 Broadway are actually the same building with access to both streets).[5] Plaintiffs' investigator was later directed to a warehouse at 89 Crosby Street, New York, NY 10012, stocking Counterfeit Products for 420 Broadway, whereupon Lin informed the investigator that the purchase of Counterfeit Products by credit card would have to be completed at his store at 420 Broadway.[6] Plaintiffs' investigator completed the purchase of Counterfeit Products by credit card at the retail space at 420 Broadway operated by Lin.[7]

Plaintiffs' representatives went to 420 Broadway on July 20, 2007 pursuant to the TRO and observed the PSK Defendants displaying and offering for sale Counterfeit Products. Plaintiffs' representatives promptly served the Defendant PSK and Defendant Yoo as an XYZ

---

[2] *See generally* Declaration of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl."), filed in support of TRO Application.
[3] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.
[4] *See* PSK Defendants Memorandum of Law In Opposition to Preliminary Injunction and for Dissolution and Modification of Court's TRO as to PSK and Yoo ("PSK Defendants' Memorandum") at 2.
[5] McCarthy Decl. at ¶ 35.
[6] *Id.* at 39.
[7] *Id.* at 40.

Company and a John Doe Defendant, respectively.[8]  Pursuant to the TRO, Plaintiffs' representatives seized 45 Counterfeit Products from 420 Broadway, as well as documents, and also restrained assets held in the names of Defendant Yoo and Defendant PSK.[9]  By the PSK Defendants' own admission, PSK Defendants provide retail space to Lin via a sub-lease and also provide credit card processing services for Lin's sale of Counterfeit Products.[10]  PSK Defendants sub-lease some of their retail space and work directly alongside Lin and are aware that Lin sells handbags.[11]  Lin makes regular monthly rent payments to PSK Defendants as part of his sub-lease of the 420 Broadway retail space.[12]

Although PSK Defendants state that they did not know Lin sold Counterfeit Products until July 20, 2007, the date the TRO was executed,[13] PSK Defendants are admittedly aware of Lin's prior involvement with the sale of products bearing counterfeit Louis Vuitton marks, due to an earlier action in which PSK was also named as a defendant and consented to a permanent injunction.[14]  Documents seized from 420 Broadway, a space shared by the PKS Defendants and Lin, included numerous sales receipts for the sale of Counterfeit Products from that location.[15]  Under these circumstances, it is incredulous for the PSK Defendants to suggest they had no knowledge of and did not participate in counterfeiting Plaintiff's Marks

---

[8] Declaration of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the TRO at ¶ 2.
[9] Id. at ¶¶ 3-5
[10] PSK Defendants' Memorandum at 2, 4.
[11] Id. at 3.
[12] Id.; see also Declaration of Heidi Garfield in Support of Plaintiffs' Reply to PSK Defendants' Opposition ("Garfield Decl."), dated August 2, 2007, at ¶ 2, Ex. A.
[13] PSK Defendants' Memorandum at 4.
[14] See Declaration of Jae Man Yoo, filed in Support of PSK Defendants' Opposition ("Yoo Decl."), dated August 1, 2007, at ¶ 17 and Ex. F; see also Garfield Decl. at ¶ 3, Ex. B.
[15] Garfield Decl. at ¶ 4, Ex. C.

## ARGUMENT

**I.    Plaintiffs Are Entitled To A Preliminary Injunction Against The PSK Defendants**

The Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. 1116(a). The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995). This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979). As explained in full in Plaintiffs' Memorandum filed in support of the TRO, all defendants in this action are causing Plaintiffs irreparable harm by their counterfeiting operations, and Plaintiffs are likely to succeed on their claims. As shown below, Plaintiffs specifically meet the preliminary injunction criteria with respect to the PSK Defendants.[16]

### A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST THE PSK DEFENDANTS

To prevail on their claim of trademark infringement, Plaintiffs must demonstrate that they own Plaintiffs' Marks and that a likelihood of confusion will result from the PSK Defendants' conduct. *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.

---

[16] As the PSK Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).

1999); *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486, 489090 (2d Cir. 1988). The PSK Defendants do not dispute Plaintiffs' ownership of Plaintiffs' Marks. The PSK Defendants argue only that they did not take part in the counterfeiting business discovered by Plaintiffs at the PSK Defendants' premises. This is the ultimate issue in this case, because "counterfeit marks are inherently confusing." *Philip Morris US Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004). As set forth in Plaintiffs' Memorandum in support of the TRO, and recognized by this Court's grant of the TRO, Plaintiffs have established at least a likelihood that the PSK Defendants are in fact engaging in unauthorized, confusing use of Plaintiffs' Marks.

Plaintiffs' TRO Application specifically identifies sales of Counterfeit Products at PSK Defendants' location, in a shared space with PSK Defendants. Moreover, PSK Defendants knowingly provide services for Lin to complete credit card purchases of Counterfeit Products. PSK Defendants' involvement with Lin and the sale of Counterfeit Products has continued over time even with PSK Defendants' knowledge of Lin's prior counterfeiting activities with Louis Vuitton.[17] Despite the PSK Defendants' current protestations of innocence, Plaintiffs are likely to succeed in proving that the PSK Defendants are liable for trademark infringement, thus a preliminary injunction should be entered against them.

### B. ALTERNATIVELY, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST THE PSK DEFENDANTS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also, Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce"); *Carter Int'l*

---

[17] *See* Yoo Decl. at ¶ 17 and Ex. F; *see also* Garfield Decl. at ¶ 3, Ex. B.

*B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *3 (S.D.N.Y. Apr. 17, 2003) (finding an indirect actor liable for trademark counterfeiting when the party knew or had reason to know it was engaging in trademark infringement). This Court has recognized "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party." *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982). Since a seller bears strict liability for violations of the Lanham Act, even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark infringement -- intent is not required. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). A contributor who knew or had reason to know of the Lanham Act violations or was "willfully blind" to the violations is liable for trademark infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996). To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004). Even if the PSK Defendants are not directly involved in the sale of the Counterfeit Products, they remain liable for contributory trademark infringement because they chose to be willfully blind to the counterfeiting business operated by their subtenants from the PSK Defendants' premises, even with knowledge of Lin's prior history as a counterfeiter and likelihood for recidivism.

In particular, landlords, such as the PSK Defendants, have been found contributorily liable for the acts of trademark infringement committed directly by their tenants. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). Thus, the PSK Defendants are contributorily liable for trademark infringement and trademark counterfeiting as a result of their participation in the infringement and counterfeiting of Plaintiffs' Marks.

In addition, the PSK Defendants cannot contractually escape liability for contributory infringement. *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 203 (3d Cir. 2004) (contract exclusion does not apply to tort claims); *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd,* 432 F.2d 784 (2d Cir. 1970). PSK Defendants' sub-lease agreement with Lin that prohibits sales of Counterfeit Products under the terms of the lease does not eliminate PSK Defendants' tort liability.[18] Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against the PSK Defendants and are entitled to a preliminary injunction.

## II. PLAINTIFFS ARE ENTITLED TO CONTINUE ASSET RESTRAINT AS TO THE PSK DEFENDANTS AND SUCH RESTRAINT IS NOT WRONGFUL

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs ultimately will be entitled to an equitable accounting of PSK Defendants' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark."). In determining whether to issue an order restraining a defendant's assets, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and

---

[18] *See* Yoo Decl. at ¶ 18, Ex. B.

irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if their assets were not frozen. *Reebok*, 737 F. Supp. at 1524, 1527.

As demonstrated above, and recognized by this Court's grant of the TRO, Plaintiffs will likely succeed on the merits of their claims and are incurring irreparable injury. Further, the knowledge of the PSK Defendants' and willful blindness toward rampant counterfeiting, described above, tends to favor the conclusion that they would likely hide their assets, thereby rendering an accounting meaningless. With regard to the PSK Defendants' allegations that the asset restraint in the TRO is in any way improper, Plaintiffs note that the PSK Defendants did not approach Plaintiffs as allowed for in the TRO to negotiate the release of any assets, or provide any financial documents to support such a request.[19] Accordingly, the grant of an injunction restraining the transfer of the PSK Defendants' assets was and will continue to be proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to deny the PSK Defendants' requested relief of releasing of PSK Defendants' restrained assets and an award of damages, and grant Plaintiffs' request for entry of a preliminary injunction against the PSK Defendants in the form contained in the TRO.

Dated: New York, New York
August 2, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By: _____
Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
James Donoian (JD 9052)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
MetLife Building
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

---

[19] Garfield Decl. at ¶ 5.

                    Katherine Compton
                    GREENBERG TRAURIG, LLP
                    2200 Ross Avenue
                    Suite 5200
                    Dallas, Texas 75201
                    Telephone: (214) 665-3660
                    Facsimile: (214) 665-5960
                    *Pro Hac Vice Pending*
                    *Attorneys for Plaintiffs*
                    *Chloé, S.A.S., J. Choo Limited*