# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

CHLOÉ, S.A.S., J. CHOO LIMITED,

              Plaintiffs,

        - against -

KEN CHEN a/k/a SHU CHEN a/k/a XIANG
CHEN, DANIEL DOE, GODDESS
TRADING d/b/a
GODDESSTRADING@HOTMAIL.COM,
LUXUNG GOODS, LUXURY GOODS,
TERRY DOE d/b/a
AZNTERRY911@HOTMAIL.COM, JASON
DOE d/b/a JARRY326@YAHOO.COM.CN,
FASHION HANDBAGS, BENNY DOE,
JEANCARLO DOE, JOSEPH a/k/a JOSE
DOE, SISI a/k/a CECI DOE, TOP LUXURY
HANDBAGS d/b/a
LUXURYHANDBAGS277@YAHOO.COM,
FRANCISCO DOE, BEN DOE, CARLOS
DOE, INSTYLE LUXURY HANDBAGS,
CORINA DOE a/k/a QIMIAO HU a/k/a QI
MIAO HU, KENNY DOE a/k/a YE GUO
a/k/a GUO Q YE, NEWCOME TRADING
d/b/a TOSCA, QUICK GLOBAL SHIPPING,
HOWARD EXPRESS SHIPPING, RANDY
DOE, and various JOHN and JANE DOES 1-
10 and XYZ COMPANIES
(UNIDENTIFIED),

              Defendants.

Civil Action No.: 07 CV 6491 (WCP)

**[FILED UNDER SEAL
PURSUANT TO 15 U.S.C. § 1116]**

**MEMORANDUM OF LAW IN REPLY TO
DEFENDANTS NEWCOME TRADING,
INC.'s d/b/a TOSCA, NEW WEALTH, INC.'s
d/b/a TOSCA and TOSCA HANDBAGS'
OPPOSITION TO THE TEMPORARY
RESTRAINING ORDER, SEIZURE ORDER,
ORDER TO SHOW CAUSE FOR A
PRELIMINARY INJUNCTION, EXPEDITED
DISCOVERY ORDER, ORDER
RESTRAINING ASSETS AND ORDER
SEALING FILE AND IN OPPOSITION TO
DEFENDANTS NEWCOME TRADING,
INC.'s d/b/a TOSCA, NEW WEALTH, INC.'s
d/b/a TOSCA and TOSCA HANDBAGS'
CROSS MOTION TO RELEASE SEIZED
ASSETS**

---------------------------------------------------------- X

CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively,

"Plaintiffs") hereby submit this Memorandum of Law in Reply to Defendants Newcome

Trading, Inc.'s ("Newcome") d/b/a Tosca, New Wealth, Inc.'s ("New Wealth") d/b/a Tosca and

Tosca Handbags' ("TH") (collectively, "Tosca Defendants") Opposition to Plaintiffs' *ex parte*

Application for a Temporary Restraining Order ("TRO"), to the extent Plaintiffs request a

preliminary injunction continuing the asset restraint of the TRO, and in opposition to the Tosca

Defendants' cross-motion to release seized assets as it applies to the Tosca Defendants. For the reasons detailed below the Tosca Defendants' opposition and cross-motion should be denied.

## PRELIMINARY STATEMENT

As detailed in Plaintiffs' documents submitted in support of their Application for a Temporary Restraining Order and other relief, Plaintiffs are world-famous designers and producers of high-quality handbags, apparel and other luxury goods ("Plaintiffs' Products"). which are identified by one or more of Plaintiffs' several federally registered marks ("Plaintiffs' Marks")[1]  The Tosca Defendants, are knowingly engaged in the manufacture, import, distribution, and sale of handbags which are counterfeits of Plaintiffs Products in that they duplicate, virtually stitch for stitch, Plaintiffs' Products and are sold to others who affix labels bearing Plaintiffs' Marks (the "Counterfeit Products"). The Tosca Defendants, with other Defendants named in this action, are part of a common operation which controls various shops, booths and businesses, primarily in lower Manhattan (Chinatown) that sell Counterfeit Products to the tourists and residents alike. Defendants are knowingly trafficking in counterfeits of Plaintiffs' handbags in reckless disregard for trademark law and the rights of Plaintiffs, and are thus liable under theories of both direct and contributory trademark infringement. Unless restrained by a preliminary, and ultimately a permanent, injunction, the Tosca Defendants' rampant counterfeiting will continue to cause irreparable harm to Plaintiffs and to Plaintiffs' valuable and famous trademarks, their outstanding reputation and goodwill, and their rightful market position.

---

[1] *See* Compl. Exs. A-B.

## FACTUAL BACKGROUND

### I.    Plaintiffs' World Famous Trademarks and Products

Plaintiffs are leading designers and producers of high-quality luxury goods, including handbags, sold under a number of trademarks and trade names, including Plaintiffs' Marks, throughout the United States and elsewhere in the World ("Plaintiffs' Products"). Plaintiffs own the entire right, title and interest in and to Plaintiffs' federally registered marks, many of which are incontestable.[2]

### II.    The Tosca Defendants' Conduct

As Plaintiffs' Application for the TRO details, and the documents seized during execution of the TRO confirm, the Tosca Defendants are engaging in the manufacture, sale, offer for sale and/or distribution of Counterfeit Products during the execution of the TRO. Plaintiffs have not in any way authorized or consented to the Tosca Defendants' manufacture, sale or distribution of Counterfeit Products.[3] The Tosca Defendants supply identical copies of Plaintiffs Products to Canal Street operatives who then affix plates, buttons, and other indicia of Plaintiffs' Marks and resell such products as Plaintiffs' Products when in fact they are not. The Tosca Defendants are clearly aware of genuine Plaintiffs' Products and the role they are playing in the counterfeiting of Plaintiffs Products by supplying the key product which is then transformed into counterfeits of Plaintiffs Products.

Plaintiffs first discovered the involvement of the Tosca Defendants in the sale of Counterfeit Products when a defendant at 248B Canal Street, "Kenny" told Plaintiffs' investigator to make a money order for the purchase of Counterfeit Products payable to

---

[2] *See* Declaration of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Declaration of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Support of Plaintiffs' Application for a Temporary Restraining TRO, Seizure TRO, TRO to Show Cause for Preliminary Injunction, TRO Restricting the Transfer of Assets and TRO for Expedited Discovery ("TRO Application"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Application and Complaint, filed July 17, 2007, in this matter are incorporated herein by reference.
[3] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.

"Tosca".[4] Plaintiffs' investigator shortly thereafter received a shipment of Counterfeit Products

with a return address listing the name "Tosca."[5] The money order used to pay for this shipment

was endorsed for deposit by Newcome d/b/a Tosca.[6]

On July 24, 2007, Plaintiffs' representatives served Newcome d/b/a Tosca at 125 W. 30th

Street, New York, NY 10001, the registered address for Newcome .[7] Pursuant to the TRO,

Plaintiffs' representatives seized 107 handbags constituting the means for making Counterfeit

Products, as well as documents, and also restrained assets held in the name of Newcome.[8]

During the seizure and subsequent review of the documents seized, Plaintiffs' representatives

discovered that Newcome is the New York arm of New Wealth, a Los Angeles-based handbag

manufacturer and distributor, operating as Tosca.[9] The Tosca Defendants admit that Newcome

purchases their handbags from New Wealth.[10] On July 26, 2007, Plaintiffs' representatives

executed the seizure order on the Tosca Defendants' Los Angeles locations.[11] Despite

Newcome's advance warning to New Wealth of the imminent seizure, Plaintiffs' representatives

seized 608 handbags constituting the means for making Counterfeit Products, as well as

documents relating to the Tosca Defendants' sale of Counterfeit Products.[12]

Documents and goods seized from the Tosca Defendants demonstrate a vast and ongoing

business of the manufacture, distribution and sale of Counterfeit Products:

- Invoices seized evidence thousands of dollars in the sale of Counterfeit Products.[13]

---

[4] McCarthy Decl. ¶¶ 70-71.
[5] Id. at ¶ 72.
[6] Id. at ¶ 76.
[7] Declaration of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the TRO at ¶ 33.
[8] Id. at ¶¶ 33-35.
[9] Declaration of Heidi Garfield in Support of Plaintiffs' Reply to Tosca Defendants' Opposition and in Opposition to Tosca Defendants' Cross-Motion ("Garfield Decl."), dated August 2, 2007, at ¶¶ 13-14, Ex. L-M.
[10] Declaration of Steve Chang in Partial Opp'n to Pls' Mot. for Prelim. Inj. and in Supp. of Cross-Mot. to Release Seized Funds, ¶ 6.
[11] Bookbinder Decl. at ¶¶ 44-45.
[12] Id.; Declaration of Gregory A. Nylen in Support of Plaintiffs' Reply to Tosca Defendants' Opposition and in Opposition to Tosca Defendants' Cross- Motion, dated August 2, 2007, ¶¶ 2-4.
[13] Garfield Decl. at ¶ 12, Ex. K.

- Seized documents include "code" sheets that list brands, such as Chloé and Jimmy Choo, by initial and name codes including "CH", "CHL", "Chloe", "Cloe", "Chlo", "Jmy Ch", "JC" and "J Ch".[14] These codes match Tosca's distribution-wide style numbers for Counterfeit Products used by all defendants in the distribution stream.[15]

- Guided by the Tosca Defendants' own style numbers, Plaintiffs' representatives seized hundreds of Counterfeit Products identical to Plaintiffs' Products.[16]

- Comparing a Tosca document listing style numbers and photos of Tosca products with photos of genuine Plaintiffs' Products demonstrates the identity of the goods.[17]

- Documents seized from Tosca and from Defendants operating in Chinatown confirm that Tosca is supplying Counterfeit Products downstream.[18] Tosca Defendants' own sales report indicates that "Chinatown" represents approximately 30% of Tosca Defendants' business per month, with numerous collections coming from named Defendants in this action, including, for example, Defendant Ken Chen a/k/a Shu Chen a/k/a Xiang Chen operating at 251A Canal Street.[19]

## ARGUMENT

I.  **Tosca Defendants Failed to Comply with S.D.N.Y. Local Rule 7.1 by Not Submitting a Memorandum of Law.**

The Tosca Defendants failed to file and serve a memorandum of law as required by Local Rule 7.1 with their opposition. *See* S.D.N.Y. Local Civ. R. 7.1  For this reason alone, the Court should strike the Tosca Defendants' opposition. "Failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion. It is not necessary to reach the merits." *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, No. 98 Civ. 5045, 2000 WL 96944, *3 (S.D.N.Y. July 11, 2000). Although the Tosca Defendants submitted an affirmation of counsel in opposition to Plaintiffs' request for a preliminary injunction and in support of their cross-motion, "[s]ubmitting an affidavit rather than a memorandum of law is insufficient under

---

[14] *Id.* at ¶ 2, Ex. A.
[15] *Id.* at ¶ 9, Ex. I.
[16] Bookbinder Decl. at ¶¶ 44-45; Garfield Decl. at ¶¶ 3, 6, 11, 15. Exs. B, E, J, N.
[17] *Compare* Garfield Decl. at ¶ 11, Ex. J and ¶ 16, Ex. O.
[18] *Id.* at ¶¶ 8-10, Exs. G-I
[19] *Id.* at ¶ 8, Ex. G

Local Rule 7.1." *Wenzhou Wanli Food Co.*, 2000 WL 964944 at *3; *see also Microsoft Corp. v. K & E Computer Inc.*, No. 00 Civ. 7550(RLC), 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) (where "defendants only filed an affirmation in opposition to [plaintiff's] motion to dismiss, and they did not cite to any legal authority," Rule 7.1 was not met). Further, legal arguments are not appropriate in an attorney's affirmation, but should only be presented in a properly filed memorandum of law. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (striking legal arguments from an attorney's affidavit filed in support of a motion).

The Tosca Defendants' failure to comply with the Court's local rules by failing to submit a memorandum of law is fundamentally unfair and prejudicial to Plaintiffs and the Court should disregard Tosca Defendants' opposition and cross-motion.

## II.    The Tosca Defendants Agree to Plaintiffs' Right To a Preliminary Injunction

The Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. 1116(a). The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or 9b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995). This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979). In their Opposition, the Tosca

Defendants concede Plaintiffs' right to a Preliminary Injunction..[20] As further shown below,

Plaintiffs specifically meet the preliminary injunction criteria with respect to the Tosca

Defendants.[21]

## A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIM OF TRADEMARK INFRINGEMENT AGAINST THE TOSCA DEFENDANTS

To prevail on their claim of trademark infringement, Plaintiffs must demonstrate that they

own Plaintiffs' Marks and that a likelihood of confusion will result from the Tosca Defendants'

conduct. *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.

1999); *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486, 489090 (2d Cir. 1988).[22] The

Tosca Defendants argue only that they did not take part in the counterfeiting business discovered

by Plaintiffs at the Tosca Defendants' premises. However, upon a showing that the Tosca

Defendants participated in counterfeiting with the specific intent to copy Plaintiffs' Marks,

"likelihood of confusion will be presumed as a matter of law." *The N.Y. State Soc'y Certified*

*Public Accountants v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 340 (S.D.N.Y.), citing *Mobil*

*Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987). The issue to be

determined is "'whether the defendant adopted its mark with the intention of capitalizing on

plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'"

*Kraft Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 131 (S.D.N.Y. 1993) (emphasis

added). As set forth in Plaintiffs' Memorandum in support of the TRO, and recognized by this

Court's grant of the TRO, Plaintiffs have established at least a likelihood that the Tosca

Defendants are manufacturing, offering for sale and selling products whose sole purpose is to

confuse consumers as to their origin. For example, Tosca Defendants directly benefited from the

---

[20] *See* Declaration of Thomas J. McKenna in Support of Tosca Defendants' Opposition and Cross-Motion at ¶ 7.
[21] As the Tosca Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).
[22] The Tosca Defendants also do not dispute Plaintiffs' ownership of Plaintiffs' Marks.

sale of Counterfeit Products in Chinatown. The seizure from the Tosca Defendants not only revealed Counterfeit Product codes, but resulted in the seizure of hundreds of Counterfeit Products, organized by Tosca Defendants' codes, that match Plaintiffs' Products. Despite the Tosca Defendants' current protestations of innocence, Plaintiffs are likely to succeed in proving that the Tosca Defendants are liable for trademark infringement, thus a preliminary injunction should be entered against them.

## B. ALTERNATIVELY, PLAINTIFFS ARE LIKELY TO SUCCEED AGAINST TOSCA DEFENDANTS ON GROUNDS OF CONTRIBUTORY TRADEMARK INFRINGEMENT

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also, Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce"); *Carter Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *3 (S.D.N.Y. Apr. 17, 2003) (finding an indirect actor liable for trademark counterfeiting when the party knew or had reason to know it was engaging in trademark infringement). This Court has recognized "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party." *Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 395 (S.D.N.Y. 1982). Since a seller bears strict liability for violations of the Lanham Act, even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark infringement -- intent is not required. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). A contributor who knew or had reason to know of the Lanham Act violations or was "willfully blind" to the violations is liable for trademark infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th

Cir. 1996). To be willfully blind, one must suspect wrongdoing and deliberately fail to investigate. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004). Even if the Tosca Defendants are not directly involved in the sale of the Counterfeit Products and produce, as they posit, only unmarked bags, they remain liable for contributory trademark infringement because they chose to be willfully blind to the counterfeiting business operated by their customers. The Tosca Defendants were well aware of the ultimate route their unmarked bags would take downstream, as the Tosca Defendants utilized style numbers clearly coded to Plaintiffs Marks, and applied these same codes in customer transactions.[23] That Tosca Defendants did not stamp the bags themselves with the words "Chloe" or "Jimmy Choo" merely sidesteps the infringement they did commit by offering up the very means for making the Counterfeit Products, for which the Tosca Defendants must be held liable. *See generally, Incline Techs., Inc. v. Pacific Medical Group, Inc.*, No. CV-N-96-99-DWH, 1996 WL 806142, *1 (D. Nev. Mar. 29, 1996) (specifically issuing order on emergency motion to enforce preliminary injunction authorizing plaintiff to seize from counterfeiting defendant machinery and raw materials used to make counterfeit products).

## II.    PLAINTIFFS ARE ENTITLED TO CONTINUE THE ASSET RESTRAINT AS TO THE TOSCA DEFENDANTS AND SUCH RESTRAINT WAS NOT WRONGFUL

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs ultimately will be entitled to an equitable accounting of the Tosca Defendants' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g., Levi*

---

[23] Garfield Decl. at ¶¶ 2, 8-10, Exs. A, G-I.

*Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark."). To succeed on a request for an asset restraint, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their ill-gotten funds if their assets were not frozen. *Reebok*, 737 F. Supp. at 1524, 1527.

As demonstrated above, and recognized by this Court in its grant of the TRO, Plaintiffs will likely succeed on the merits of their claims and are incurring irreparable injury. Further, Plaintiffs' counsel was informed on the day that the TRO was executed on Newcome that a Newcome representative attempted to withdraw funds from one of the restrained accounts, after Newcome had been properly served with the TRO and had notice of its asset restraint provisions.[24] This behavior tends to favor the conclusion that the Tosca Defendants would likely hide their assets, thereby rendering an accounting meaningless. Accordingly, the grant of an injunction restraining the transfer of Tosca Defendants' assets was and continues to be proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to deny the Tosca Defendants' requested relief of vacature of the asset restraint provision of the TRO, and grant Plaintiffs' request for a preliminary injunction against the Tosca Defendants in the form contained in the TRO.

---

[24] Declaration of Julie Bookbinder in support of Plaintiffs' Reply in Opposition to Tosca Defendants' Opposition to TRO ("Second Bookbinder Decl."), dated August 2, 2007, at ¶¶ 2-3.

Dated: New York, New York
      August 2, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By:_____

Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
James Donoian (JD 9052)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
MetLife Building
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Katherine Compton
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3660
Facsimile: (214) 665-5960
*Pro Hac Vice Pending*

*Attorneys for Plaintiffs*
*Chloé, S.A.S., J. Choo Limited*