IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
CHLOÉ, S.A.S., J. CHOO LIMITED

               Plaintiffs,

   - against -

KEN CHEN a/k/a SHU CHEN a/k/a XIANG CHEN, DANIEL DOE, GODDESS TRADING d/b/a GODDESSTRADING@HOTMAIL.COM, LUXUNG GOODS, LUXURY GOODS, TERRY DOE d/b/a AZNTERRY911@HOTMAIL.COM, JASON DOE d/b/a JARRY326@YAHOO.COM.CN, FASHION HANDBAGS, BENNY DOE a/k/a YU LIN, JEANCARLO DOE, JOSEPH a/k/a JOSE DOE a/k/a JOSE CHONG WEN, SISI a/k/a CECI DOE, TOP LUXURY HANDBAGS d/b/a LUXURYHANDBAGS277@YAHOO.COM, FRANCISCO DOE, BEN DOE, CARLOS DOE a/k/a CARLOS RENE TSE SIO, INSTYLE LUXURY HANDBAGS, LIN LIN NAN a/k/a CORINA DOE a/k/a QIMIAO HU a/k/a QI MIAO HU, KENNY DOE a/k/a YE GUO a/k/a GUO Q YE, NEWCOME TRADING d/b/a TOSCA, QUICK GLOBAL SHIPPING, HOWARD EXPRESS SHIPPING, RANDY DOE, JAE MAN YOO, YAN HE XIA, WAI KIT WONG, CHEN LI YU, CHEN X. JIANG, W. FEI ZENG, CHENG CHEN, XIANXN CAI, FU ALEJANDRO CHANG, WAI KIT LEW, ENYI HUANG, YUE XU, SONG GAO, LISA WU, JIMMY NG, TUAN PHAN, LING CAI, LISA CHAN YAN FEN CHEN, P.S.K. AMERICA, INC., HENG FA INC., CHEN STAR GIFT SHOP, JOEY'S GIFT SHOP, INC., CATSE CO., INC., SHEN XING GIFT SHOP INC., NEW WEALTH TRADING, INC. d/b/a TOSCA USA, TOSCA HANDBAGS, NICE HANDBAGS, 265 CANAL BOOTH #16, 265 CANAL BOOTH #5, 265 CANAL BOOTH #4, 277 CANAL ADJACENT H-3D, 421A BROADWAY, and various JOHN and JANE DOES and XYZ COMPANIES (UNIDENTIFIED),

               Defendants.
-------------------------------------------------------------X

Civil Action No.: 07 CV 6491 (WHP)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS QUICK GLOBAL SHIPPING, LISA WU d/b/a QUICK GLOBAL SHIPPING AND SONG GAO d/b/a QUICK GLOBAL SHIPPING'S MOTION TO RECONSIDER AND MODIFY ORDER GRANTING PRELIMINARY INJUNCTION.**

CHLOÉ, S.A.S., ("Chloé") and J. CHOO, LIMITED ("Jimmy Choo") (collectively, "Plaintiffs") submit this Memorandum of Law in Opposition to Defendants Quick Global Shipping ("Quick Global"), Lisa Wu ("Wu") d/b/a Quick Global Shipping and Song Gao ("Gao") d/b/a Quick Global Shipping's (collectively, "Quick Defendants") Motion to Reconsider and Modify Order Granting Preliminary Injunction.

## PRELIMINARY STATEMENT

Plaintiffs, world-famous designers of high-quality handbags and other luxury goods, brought this Action against a group of defendants, including the Quick Defendants, for manufacturing, importing, distributing, and selling counterfeit handbags bearing copies of Plaintiffs' federally registered marks and designed to look identical to Plaintiffs' handbags, or means for making the same (collectively, "Counterfeit Products") without Plaintiffs' consent or authorization. Based on evidence presented by Plaintiffs, this Court granted a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO") on July 19, 2007. When Plaintiffs' representatives executed the TRO at the Quick Defendants' premises at 25 Howard Street, New York, New York 10013 (the "Premises") on July 25, 2007, they caught the Quick Defendants "red-handed" and confiscated over 165 Counterfeit Products as well as records demonstrating the knowing shipment and storage of Counterfeit Products for defendants named in this Action, among others. The Court entered the Preliminary Injunction against the Quick Defendants on August 17, 2007 after holding two evidentiary hearings on the issue.

The Quick Defendants have now made an untimely Motion to Reconsider and Modify the Preliminary Injunction ("Motion"). The Quick Defendants raise no arguments in their Motion that were not already raised in their earlier oppositions to entry of the Preliminary Injunction ("PI"). Moreover, since the time of the entry of the PI, Plaintiffs have discovered more evidence

2

demonstrating that the Quick Defendants knowingly shipped, received and stored Counterfeit Products. In fact, the Quick Defendants were one of a limited number of operations providing a critical shipping service to those on Canal Street dealing in counterfeit products. As shown below, Plaintiffs continue to be entitled to a preliminary injunction as they will likely succeed on the merits of this case. In addition, Plaintiffs continue to be entitled the asset restraint provision of the preliminary injunction, as modified by the Court. The Court should reject the Quick Defendants' frivolous Motion.

## FACTUAL BACKGROUND

Plaintiffs are leading designers of high-quality luxury goods, including handbags ("Plaintiffs' Products"), sold under a number of trademarks and trade names, including Plaintiffs' federally registered trademarks ("Plaintiffs' Marks"), throughout the United States and elsewhere in the World. Plaintiffs own the entire right, title and interest in and to Plaintiffs' Marks, many of which are incontestable.[1] Neither the Quick Defendants, nor any other defendants in this Action, have disputed Plaintiffs' ownership of Plaintiffs' Marks and Products or Plaintiffs' right to protect and enforce these rights. Plaintiffs have not in any way authorized or consented to any Defendant's sale or distribution of Counterfeit Products.[2]

Prior to bringing this Action, Plaintiffs, through their counsel and investigators, thoroughly investigated the Quick Defendants and confirmed that they were knowingly participating in the sale and distribution of Counterfeit Products.[3] The Quick Defendants shipped and received payments for Counterfeit Products, and rented storage space to known

---

[1] *See* Decl. of Theresa Walker, dated July 13, 2007 ("Walker Decl."), ¶¶ 4-5; Decl. of Hannah Merritt, dated July 13, 2007 ("Merritt Decl."), ¶¶ 1,5, filed in Supp. of Pls' Appl'n for a Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order Restricting the Transfer of Assets and Order for Expedited Discovery ("TRO Appl'n"), filed July 17, 2007. All documents filed in connection with Plaintiffs' TRO Application and Complaint, filed July 17, 2007, in this matter are incorporated herein by reference.
[2] Walker Decl. at ¶ 7; Merritt Decl. at ¶ 28.
[3] *See generally* Decl. of Kimberly J. McCarthy, dated July 9, 2007 ("McCarthy Decl."), filed in support of TRO Appl'n.

3

counterfeiters, including other defendants named in this Action, who openly used the Quick Defendants' Premises to store Counterfeit Products and distribute them to customers.[4]

The Quick Defendants were clearly aware of Plaintiffs' genuine products which bear Plaintiffs' Marks and the counterfeit nature of the handbags for which they provided storage and shipping services. Indeed, the Quick Defendants bought the Quick Global Shipping business after it had been named in at least one prior lawsuit for shipping counterfeit watches.[5] The Quick Defendants incorporated their business with nearly the same name and at the same address before the business was permanently enjoined from distributing counterfeits of those watch brands.[6]

On July 25, 2007, Plaintiffs' representatives executed the TRO at the Premises and seized 165 Counterfeit Products seized along with relevant documents showing the Quick Defendants' knowing involvement in the distribution of the Counterfeit Products. Plaintiffs' representatives also found several storage rooms at the Premises over which Defendants Gao and Wu, proprietors of Quick Global, had control and which contained Counterfeit Products among numerous other branded handbags.[7]

The documents and Counterfeit Products seized by Plaintiffs' representatives during the execution of the TRO at the Premises demonstrate the Quick Defendants' close connection to

---

[4] *Id*; *see also* Decl. of Heidi Garfield in Reply to Quick Defs' Opp'n to the Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Garfield Decl.") and exhibits thereto, which was filed August 2, 2007 and is incorporated herein by reference.

[5] *See* Decl. of Harley Lewin ("Lewin Decl."), filed in support of TRO Appl'n, dated July 17, 2007, Ex. A (Perm. Inj. And Final J. On Consent As To Defs. Q's Global Inc., et al., entered Sept. 14, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002)); *see also* McCarthy Decl. at ¶¶ 83-84; Supp. Decl. of Heidi Garfield in Supp. of Pls' Second Reply to Quick Defs' Opp. to the Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Supp. Garfield Decl."), dated August 9, 2007, at ¶ 2, Ex. F. The Supplemental Garfield Decl. follows the Garfield Decl., filed August 2, 2007.

[6] *Id.*

[7] Decl. of Julie Bookbinder ("Bookbinder Decl."), filed August 2, 2007, pursuant to the TRO, at ¶ 41; Decl. of Julie Bookbinder, dated Oct. 1, 2007, filed herewith ("Bookbinder Decl. 2") and incorporated by reference, at ¶¶ 3-4, Exs. B-C.

4

known counterfeiters, such as a ring-leader of this Chinatown counterfeiting group, Defendant Ken Chen, and other defendants in this Action.[8] At the Premises, Plaintiffs' representatives seized a number of sales receipts from a distributor of Counterfeit Products and another defendant in this Action, Newcome Trading Inc. d/b/a Tosca.[9] In addition, other documents seized from the Premises evidence that the Quick Defendants, and in particular, Defendant Wu, were on notice of the counterfeit nature of the products they were shipping and the products their tenants were storing on the Premises.[10] On or about March 29, 2007, Defendant Wu received three letters from another luxury goods brand, Louis Vuitton Malletier, alleging that Quick Global was in possession of counterfeit Louis Vuitton and Marc Jacobs merchandise.[11] Defendant Wu personally signed these letters acknowledging their receipt and her turnover of a total of 121 counterfeit items to an agent for Louis Vuitton Malletier.[12] Documents seized from the Premises also reveal funds being paid to "Lisa" for "Chinatown handbags" and other correspondence under Defendant Wu's name regarding the shipment of handbags.[13] Indeed, the seizure of these documents and more than 165 Counterfeit Products from the Quick Defendants' Premises inextricably links them to counterfeiting activity. The Quick Defendants' professed ignorance of the extensive counterfeiting activities going on from the Premises is simply not credible.

## ARGUMENT

### I. QUICK DEFENDANTS' MOTION FOR RECONSIDERATION IS UNTIMELY

The Quick Defendants filed their motion for reconsideration of the PI on September 17, 2007, a full month after the PI was entered August 17, 2007. Local Civil Rule 6.3 of the

---

[8] *See* Garfield Decl. at ¶¶ 2-4, Exs. A-C; Bookbinder Decl. 2 at ¶¶ 3-4, Exs. B-C.
[9] *See* Garfield Decl., at ¶4, Ex. C.
[10] See Bookbinder Decl. 2 at ¶¶ 5-6, Exs. D-E.
[11] *Id.*
[12] *Id.*
[13] *Id.* at ¶¶7-8, Exs. F-G.

5

Southern District of New York ("Local Rule 6.3") requires that a notice of motion for reconsideration of a court order determining a motion shall be served within ten days after entry of the court's determination of the original motion, with a supporting memorandum of law. S.D.N.Y. Local Civ. R. 6.3. A motion for reconsideration may be denied simply for being untimely. *People United for Children, Inc. v. City of New York*, No. 99 Civ. 0648 (RJW)(KTD), 2003 WL 22056930, at *3 n3 (S.D.N.Y. Sept. 3, 2003); *Finance One Pub. Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, No. 00 Civ. 6739 (CBM), 2003 WL 22056983, at *1 (S.D.N.Y. Sept. 4, 2003). Particularly in an instance, such as here, where the movant presents only arguments already considered and rejected by the court in consideration of the original motion, a motion for reconsideration must fail. *Finance One Pub. Co. Ltd.*, 2003 WL 22056983, at *1. The Quick Defendants' motion for reconsideration should be denied for being untimely.[14]

## II. QUICK DEFENDANTS' MOTION IS INSUFFICIENT

The Quick Defendants provide no new evidence or arguments to support their request for reconsideration or modification of the PI. Instead, the Quick Defendants merely take another opportunity to repeat the same arguments and evidence already before the Court for consideration prior to entry of the PI. "To be successful on their motion for reconsideration, defendants must present matters or controlling decisions the court overlooked that might have materially influenced its earlier decision." *A. Nelson & Co. v. Ellon USA, Inc.*, No. 96 Civ 3696

---

[14] Further, the plain language of Local Rule 6.3 prohibits filing of any affidavits "unless directed by the court." S.D.N.Y. Local Civ. R. 6.3. Plaintiffs are not aware of any permission granted by the Court to the Quick Defendants, yet the Quick Defendants filed a declaration of their attorney in support of their Motion. As Plaintiffs advised the Court by letter dated September 28, 2007, Plaintiffs will not object to the Quick Defendants' filing of a declaration in support of their Motion in violation of Local Civ. Rule 6.3, provided the Court grants Plaintiffs' request to file the Declaration of Julie Bookbinder in support of Plaintiffs' Opposition to the Quick Defendants' Motion.

In addition to violating Local Rule 6.3, Quick Defendants have once again filed an attorney affidavit that is inconsistent with Southern District practice. *See, e.g.* Decl. of Mahendra Ramgopal, Esq. in Supp. of Mot. to Reconsider and Modify Order Granting PI, dated Sept. 17, 2007 ("Ramgopal Decl.") at ¶¶ 29-31 (including legal arguments). Legal arguments are not appropriate in an attorney's affirmation, but instead, should only be presented in a properly filed memorandum of law. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (striking legal arguments from an attorney's affidavit filed in support of a motion).

(RLC), 1996 WL 288214, at *1 (S.D.N.Y. May 30, 1996) (internal citation omitted) (interpreting S.D.N.Y. Local Civ. R. 3(j), now R. 6.3).

This Court takes a narrow view of motions for reconsideration, generally requiring new arguments before granting such a motion. *See id*; *Wiesner v. 321 W. 16th St. Assocs.*, No. 00 Civ. 1423 (RWS), 2000 WL 1585680, at *3 (S.D.N.Y. Oct. 25, 2000) ("Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court."). Until the present untimely Motion, the essential facts in this Action have not been disputed by the Quick Defendants, namely that Counterfeit Products were found at the Premises (resulting in seizure of over 165 items and relevant documents), or that Defendants Wu and Gao were managers of the Quick Global business. Only now does one of the Quick Defendants, Defendant Gao, appear to dispute that 165 Counterfeit Products and related documents were seized from the Premises.[15] However, this denial comes in the form of an declaration from the Quick Defendants' attorney.[16] Not only is this declaration inadmissible hearsay, but it is also impossible to discern whether the Quick Defendants are denying that the 165 Counterfeit Products and related documents were seized from the Premises at all, or whether they are denying knowledge of the Counterfeit Products and related documents. *See* Fed. R. Ev. 801-802. Regardless of what they are denying, the Quick Defendants still do not present any specific facts to support their blanket denial, and certainly no evidence that would warrant the Court to reconsider the PI.

The Quick Defendants claim they are entitled to a hearing on whether the PI should be entered. In fact, two separate hearings were already held explicitly for this purpose, one of which included testimony from Defendant Wu. The Quick Defendants attempt to characterize

---

[15] Ramgopal Decl. at ¶ 24.
[16] *Id.*

7

these hearings as "limited" and relating only to the asset restraint provision of the then-proposed PI.[17] However the only purpose of the hearings was, per the TRO served on the Quick Defendants, an order to show cause why the provisions of the TRO should not be converted into a preliminary injunction. Since the Quick Defendants fail to meet their burden to have the PI reconsidered, the Motion must be denied.

Even if the Court were to reconsider the arguments as the Quick Defendants request, the Quick Defendants cannot succeed on their request to modify the PI. It is well-settled in this Circuit that a district court considering a motion to reconsider should exercise "the same discretion it exercised in granting or denying the injunction in the first instance." *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 361 (S.D.N.Y. 2000) (citing *Sierra Club v. United States Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984)); *see also A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 01 Civ 9721 (PKL)(THK), 2006 WL 90062, at *4 (S.D.N.Y. Jan. 12, 2006) (applying this standard in trademark counterfeiting context). In the case at hand, the Quick Defendants have not proffered any material change in circumstances which "demonstrate that continuance of the injunction is no longer justified and/or will work oppressively against the enjoined parties." *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006). The Quick Defendants' Motion merely reiterates the Quick Defendants' denials of liability and argues that the Court did not apply its equitable powers properly. Hence, the Quick Defendants' request for modification of the PI must be denied.

---

[17] *See, e.g.* Ramgopal Decl. at ¶¶ 8-9. Even if the Quick Defendants' position was correct, the Second Circuit has made clear that an evidentiary hearing is not required for all preliminary injunction cases. *See A. Nelson & Co.*, 1996 WL 288214, at *2. Though the Quick Defendants requested a hearing in their papers opposing the PI, the Court must also determine "whether facts are in dispute sufficient to warrant a hearing." *Id.*

8

### III. PLAINTIFFS HAVE MET THE EVIDENTIARY STANDARD FOR A PRELIMINARY INJUNCTION

The Court was correct in granting the PI, and there is no need to modify the PI as it stands. The Second Circuit has held that to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dair, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995). This standard applies where a preliminary injunction is sought for an alleged trademark infringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979). As explained in full in Plaintiffs' Memorandum filed in support of the TRO, and Plaintiffs' Reply Memoranda filed in response to the Quick Defendants' Oppositions to the PI, Quick Defendants were causing Plaintiffs irreparable harm and Plaintiffs met the preliminary injunction criteria.[18]

#### A. Plaintiffs Are Likely To Succeed On Their Claim Of Trademark Infringement Against The Quick Defendants

To prevail on their trademark infringement claim, Plaintiffs must demonstrate that they own Plaintiffs' Marks and that a likelihood of confusion will result from Quick Defendants' conduct, causing irreparable harm to Plaintiffs. *See, e.g. Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270. This is the ultimate issue, because "counterfeit marks are inherently confusing." *Philip Morris US Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004). The Quick Defendants do not dispute Plaintiffs' ownership of

---

[18] As the Quick Defendants do not contest the irreparable harm inflicted on Plaintiffs by the counterfeiting activities alleged by Plaintiffs, Plaintiffs will not address that prong of the preliminary injunction standard herein. (Though it is presumed in an instance of trademark counterfeiting. *See Firma Melodiya*, 882 F. Supp. at 1311).

9

Plaintiffs' Marks. They argue only that they did not take part in the counterfeiting business that was operated from the Premises.

Plaintiffs have established a likelihood that Quick Defendants were engaging in unauthorized, confusing use of Plaintiffs' Marks. Evidence seized from the Premises demonstrates that the Quick Defendants were not only shipping but also warehousing Counterfeit Products. The Quick Defendants admit that Defendant Wu is the lessee of the space occupied by Defendant Quick Global, and that Defendant Gao is the manager of Defendant Quick Global.[19] Documents seized from Quick Defendants' Premises also identify Defendant Wu as manager of Quick Global.[20] Quick Defendants also admit that Quick Global subleased the storage rooms to individuals who are believed to be dealing in Counterfeit Products, as evidenced by Plaintiffs' seizure of more than 165 Counterfeit Products from the Premises.[21]

As they did in their second opposition to the PI, the Quick Defendants incorrectly assert that this Court erroneously entered a preliminary injunction against the Quick Defendants because Plaintiffs rely on inadmissible evidence. To the contrary, a preliminary injunction may be granted under a relaxed evidentiary standard that permits evidence that may not be admissible at trial. *See RxUSA Wholesale, Inc. v. Dept. of Health and Human Servs.*, 467 F. Supp. 2d 285, 291 (E.D.N.Y. 2006) ("a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits") (internal citation omitted); *see also Gucci America, Inc. v. Accents*, No. 6-CIV-9575, 1997 WL 691431, at *2 n2 (S.D.N.Y. Nov. 5, 1997) (relaxed standard of preliminary injunction hearing permits

---

[19] Ramgopal Decl. at ¶¶ 24-25; Quick Defs. Mem. of L. in Supp. of Second Opp'n to Temporary Restraining Order, Seizure Order, Order to Show Cause for a Preliminary Injunction, Expedited Discovery Order, Order Restraining Assets and Order Sealing File ("Quick Defendants' Opp'n") at 2.
[20] Supp. Garfield Decl. at ¶ 3, Ex. G; Bookbinder Decl. 2 at ¶ 9, Ex. H.
[21] Ramgopal Decl. at ¶ 24; *see also* Quick Defendants' Opp'n at 2; Bookbinder Decl. at ¶ 41.

evidence that may not be admissible at trial). Thus, Plaintiffs have met their burden to support the PI and the Quick Defendants' Motion should be denied.

### B. In Addition, Plaintiffs Are Likely To Succeed Against The Quick Defendants On Grounds Of Contributory Trademark Infringement

It is well established that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853 (1982); *see also, Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986) ("liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce"). A party is liable for contributory trademark counterfeiting when it supplies products or services to one whom it knows or has reason to know is engaging in trademark counterfeiting. *See Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (affirming holding against 'swap meet' owner found contributorily liable for trademark infringement and counterfeiting based on vendors' sale of counterfeit products). A contributor who knew or had reason to know of Lanham Act violations or was "willfully blind" to violations is thus liable. *Fonovisa, Inc.*, 76 F.3d at 264-65. To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004). The Quick Defendants are liable for contributory trademark infringement because they had direct knowledge or were willfully blind to counterfeiting businesses run from the Premises.

This Court has granted plaintiffs a preliminary injunction against counterfeiters on facts almost identical to those here. In *Cartier Int'l B.V. v. Liu*, this Court awarded a preliminary injunction against a business acknowledged to have "knowingly handled the shipment of defendants' counterfeit merchandise to customers." *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 WL 1900852, at *2 (S.D.N.Y. Apr. 17, 2003). As in this Action, the *Cartier*

11

plaintiffs' investigators seized counterfeit goods in sealed packages found on the shippers' premises. *Id.* Indeed in the case at hand, the Quick Defendants were also renting ten storage rooms on the Premises which were found full of Counterfeit Products and other branded goods.[22] The Quick Defendants maintained access to the subleased storage units.[23] Since there is only one entrance to the Premises, any movement of merchandise to or from any of the storage rooms occurred in plain view of the Quick Global Shipping front desk.[24] Landlords, such as the Quick Defendants, have been found contributorily liable for the acts of trademark infringement committed by their tenants when they were shown to have control over the premises and have knowledge or be willfully blind to the counterfeiting activities. *See Fonovisa, Inc.*, 76 F.3d at 264-65; *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). Further, documents seized from the Premises indicate that the Quick Defendants collected money order payments for handbags and maintained accounts for at least the following named defendants in this Action maintained accounts, likely for shipping or storage services, at Quick Global: Yan Fen Chen, Ken Chen, Jose Chong [Wen], TOSCA, Carlos [Rene] Tse [Sio], and [Xianxn] Cai - Joey's [Gift Shop, Inc.].[25] There is also an account listing for "Canal & Broadway", the intersection in Chinatown closest most defendants in this Action.[26]

In addition, the Quick Defendants were previously put on notice that merchandise in their Premises was counterfeit.[27] Several months before the Action, Defendant Wu acknowledged receipt of at least three letters from another luxury goods brand and turned over 121 counterfeit items as a result.[28] Finally, Quick Defendants bought Quick Global shipping after the business

---

[22] Garfield Decl. at ¶¶ 2-4; Bookbinder Decl. at ¶ 41; Bookbinder Decl. 2 at ¶ 10.
[23] Bookbinder Decl. at ¶ 41.
[24] Bookbinder Decl. 2 at ¶ 10.
[25] *Id.* at ¶¶ 3-4, 7 Exs. B-C, E.
[26] *Id.*
[27] *Id.* at ¶¶ 5-6, Exs. D-E.
[28] Bookbinder Decl. 2 at ¶¶ 5-6, Exs. D-E.

12

had been named in at least one prior lawsuit for shipping counterfeit watches, and incorporated their business with nearly the same name and at the same address even before the prior business was permanently enjoined from distributing counterfeits of those marks.[29] There can be no question that the Quick Defendants were fully aware of the counterfeiting activities taking place on their Premises. Accordingly, Plaintiffs are likely to succeed on grounds of contributory trademark infringement against the Quick Defendants and are entitled to the PI entered by this Court.

### C. Plaintiffs Are Entitled To The Modified Asset Restraint As To The Quick Defendants

Since Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark counterfeiting and dilution claims, Plaintiffs will be entitled to an equitable accounting of the Quick Defendants' profits from their counterfeiting operations. 15 U.S.C. § 1117. In this regard, courts of several circuits have noted that a district court has the inherent authority, pursuant to the Lanham Act, to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, *9 (E.D.N.Y. Mar. 26, 2004) ("The Court holds that an accounting of profits is warranted, based on the strong and uncontroverted evidence of Defendant's willful deception and the likelihood that Defendant benefited from its association with the [plaintiff's] mark.").

Despite an entitlement to a full asset restraint, Plaintiffs have cooperated with the Quick Defendants in good faith with respect to assets linked to other businesses, including Defendant

---

[29] *See* Lewin Decl., Ex. A (Perm. Inj. And Final J. On Consent As To Defs. Q's Global Inc., et al., entered Sept. 14, 2004, *Cartier Int'l B.V. et al v. Liu et al.*, No. 02 CV 7926 (TPG) (S.D.N.Y. Oct. 4, 2002)); *see also* McCarthy Decl. at ¶¶ 83-84; Supp. Garfield Decl., at ¶ 2, Ex. F.

Wu's real estate business.[30] Plaintiffs released a substantial amount of money to Defendant Wu and promptly complied with this Court's modification of the asset restraint as to Defendant Wu when the TRO was continued, pending decision on entry of the PI.[31] Plaintiffs remain open to additional relief based on need and proof of origin of the money, however Quick Defendants' baseless assertions of "immediate harm" are insufficient to warrant modification of the asset restraint.[32] Plaintiffs will likely succeed on the merits of their claims and were incurring irreparable injury. Accordingly, the grant of an injunction restraining the transfer of certain of the Quick Defendants' assets was proper.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully urge this Court to deny the Quick Defendants' requested relief of reconsideration and modification of the PI against the Quick Defendants.

Dated: New York, New York
October 1, 2007

Respectfully submitted,
GREENBERG TRAURIG LLP

By: _____
Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
James Donoian (JD 9052)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
MetLife Building
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Katherine Compton
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200

---

[30] Garfield Decl. ¶¶ 5-6.
[31] This modification took effect after the second hearing on the PI, after which the Court continued the TRO with a modification to the asset restraint provision which limited the restraint against Defendant Wu to $10,000. *See* Cont. TRO, entered Aug. 10, 2007.
[32] Quick Defs' Mem. of L. in Supp. of Mot. to Reconsider and Modify Order Granting PI, at 3.

14

Dallas, Texas 75201
Telephone: (214) 665-3660
Facsimile: (214) 665-5960
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs
Chloé, S.A.S., J. Choo Limited*